Anthony SUTTON, Plaintiff–Appellee,

v.

TENNESSEE CIVIL SERVICE COM-
MISSION, et al.,
Defendants–Appellants.

Supreme Court of Tennessee,
at Nashville.

Oct. 30, 1989.

Charles W. Burson, Atty. Gen. & Report-
er, Michael W. Catalano, Deputy Atty.
Gen., Nashville, for defendants-appellants.

J. Ronnie Greer, Greeneville, for plain-
tiff-appellee.

OPINION

HARBISON, Justice.

Appellee, a state employee, was dis-
charged for an "habitual pattern of failure
to report for duty at the assigned time and
place." It is uncontradicted in the record
that the employee's absences or failure to
report for work were in every instance
approved by his superiors and were sup-
ported by statements from doctors. His
total absences did not exceed his accumu-
lated leave or his approved sick leave. Un-
der these circumstances, in our opinion, the
employer was not legally justified in dis-
charging appellee upon the ground alleged.
Accordingly we affirm the judgment of the
Court of Appeals and direct that the cause
be remanded for further proceedings as
directed in its opinion.

There is little controversy as to the mate-
rial facts in the case. Appellee was em-
ployed as a cook at the Green Valley Devel-
opmental Center, a state facility operated
by the Department of Mental Health and
Mental Retardation. His employment be-
gan on March 16, 1976, and his dismissal
was effective January 8, 1985. He had
been disciplined for improper use of sick
leave privileges and for habitual failure to
work at the assigned time and place on a
number of occasions during the course of
his employment and had been suspended
three times during 1982 and 1983. His
discharge, however, was predicated upon
his absences from work during the last six
months of his employment.

During that period he was off from work
on several occasions because of personal

illness or illness of members of his family, but the only time during that period when his absences were not approved by his superiors was an occasion in August 1984 when he left work a little over a half hour early. In every other instance medical statements were supplied in support of his sick leave, and there is no evidence that any of these statements, which came from several different doctors, were anything other than genuine.

T.C.A. § 8-50-801(a) provides that a full-time state employee

... shall be granted absence from work with pay based upon his accrued annual leave, the time and amount of absence to be approved at the discretion of the head of the department or agency and subject to audit by the commissioner of personnel.

T.C.A. § 8-50-801(b)(3) provides that employees having between five and ten years of full time service shall accrue annual leave at the rate of one and one-half days for each month of service and they accumulate a maximum of thirty-six work days.

Sick leave is provided for in T.C.A. § 8-50-802. Under that statute sick leave may be granted to each full-time employee at the rate of one day for each month of service or major fraction thereof, at the discretion of the head of the department or agency and with the approval of the commissioner of personnel. T.C.A. § 8-50-802(a)(3) provides:

Sick leave may be used only for absence from duty because of illness or disability due to accident of employee, his exposure to contagious diseases, or because of illness or death in the immediate family of the employee for such period as the attendance of the employee shall be necessary, except as hereinafter provided.

The fifth subdivision of the same section provides that an employee may be required to present affidavits, certificates of physicians or other proof to support the reason for any absence during the time for which sick leave was taken.

There is no evidence in this case that the appellee took sick leave for any improper purpose, or that he failed to document the leave taken with certificates of physicians, except for the one incident in August 1984. It is not insisted that that incident, standing alone, would be sufficient to justify the discharge in this case.

There is substantial evidence in the record that the absences of appellee were disruptive and caused inconvenience to the employer and to other employees. This was especially true when he failed to call in advance in sufficient time to allow his supervisor to make other arrangements. Appellee had been warned and disciplined because of his irregular attendance and on one or two occasions had been disciplined for abuse of sick leave.

There was no evidence of his abuse of sick leave during the last six months of his employment, however, and abuse of sick leave privileges was not the ground upon which he was discharged.

Chapter 1120-10-1.6(1) of the Civil Services Rules and Regulations in force at all material times provided as examples of cases when discipline might be imposed:

(1) PERFORMANCE OF DUTIES.— The following causes relating to the performance of duties are representative samples of those considered for disciplinary action:

(a) Inefficiency or incompetency in the performance of duties.

(b) Negligence in the performance of duties.

(c) Careless, negligent or improper use of State property or equipment.

(d) Failure to maintain satisfactory and harmonious working relationships with the public and fellow employees.

(e) Habitual improper use of sick leave privileges.

(f) Habitual pattern of failure to report for duty at the assigned time and place.

(g) Failure to obtain or maintain a current license or certificate required by law as a condition for performing the job.

The discharge of appellee was based solely upon the provisions of subparagraph (f). Contained in the next subdivision of the regulations was a list of examples of

personal misconduct, but none of these was cited to support the discharge of appellee.

■ Obviously, if an employee is absent from work on an approved sick leave, that person will hardly be able to report for work. Habitual absence or tardiness, of course, can be a basis for discharge, but not, in our opinion, when the employee is exercising approved sick leave privileges as in this case.

■ Had the leaves taken not been approved, a different situation would be presented. *See generally Duncan v. Tennessee Civil Service Commission,* 674 S.W.2d 734 (Tenn.App.1983). With the only unapproved absence of the employee in six months being for a little over a half hour, however, we do not believe that the evidence adduced was sufficient to justify the discharge on the basis alleged. In the absence of substantial and material evidence that the employee habitually made unauthorized or unapproved use of his sick leave privileges, we agree with the majority of the Court of Appeals that the discharge in the present case was not justified on the single ground assigned by the employer.

■ The General Assembly, through the statutes referred to above, has granted state employees a certain amount of annual leave and sick leave, the latter being subject to approval by superior officers of the employee. When the employee is exercising the leave thus granted with approval of his superiors, and when the authenticity and necessity for the sick leave are not challenged, we are of the opinion that the occasions for such leave should not be considered as a part of an "habitual pattern of failure to report for duty" as charged in this case. None of the other grounds for discipline stated in the regulations and none which might exist in addition to those so stated has been asserted by the employer. *See* T.C.A. § 8-30-326 (permitting dismissal for "the good of the service").

We agree with the statement made by the Court of Appeals in the case of *Reece v. Tennessee Civil Service Commission,* 699 S.W.2d 808, 813 (Tenn.App.1985):

It must be conceded that the public payroll cannot be made a haven for those who with or without fault have become unable to perform the duties for which they were employed. It must likewise be conceded that "the good of the service" may in proper cases justify or require the discharge of public employees when their efficiency or usefulness in their positions has been seriously impaired by their own fault, by the fault of others, or by blameless misfortune.

Nevertheless, we do not conceive that the authorized and approved use of leave privileges constitutes the ground alleged for discharge in the present case. Our holding is limited to that narrow proposition because this was the only basis alleged for the disciplinary action taken in the present case. In a letter to appellee dated December 20, 1984, his supervisor listed the absences of the employee which were the basis for the recommendation of discharge. These referred to the period from July 18, 1984, through December 16, 1984. None of them involved abuse of annual leave, and all of them involved sickness. All of them were documented by doctors' certificates except for the one incident on August 17, 1984, involving a little over thirty minutes, and all except that one were approved by superiors. The employee was paid for the time when he was off because of sickness, except for the August 17 incident.

The judgment of the Court of Appeals in this case is affirmed at the cost of appellants. The cause will be remanded to the Tennessee Civil Service Commission for further proceedings.

DROWOTA, C.J., and COOPER, J., concur.

FONES and O'BRIEN, JJ., dissent.

FONES, Justice, dissenting.

I dissent. I have a completely different view of the facts in this case and their application to the sick leave and dismissal provisions of the Code and Civil Service Regulations than that in the majority opinion.

Appellee Anthony Sutton was employed by the Greene Valley Developmental Center as a cook. The Center is a state facility operated by the Department of Mental Health and Mental Retardation. Sutton was hired on 16 March 1976. Between his hiring and March 1983 he was formally disciplined for the habitual improper use of sick leave privileges and habitual failure to report for duty at the assigned time and place on six occasions. He received a written warning in August 1977, an oral warning with written follow-up in October 1980, a written warning with a one-day suspension in May 1981, a three-day suspension without pay for three days in May 1982, a written warning in January 1983, and a one-day suspension in March 1983.

In each of his four job performance evaluations between April 1983 and November 1984 it was noted that Sutton's attendance and punctuality needed improvement. Sutton signed and concurred with three of these evaluations.

From July 1984 through December 1984 Sutton missed work as follows: In July he took five hours leave to take his child to the doctor; in August he called in sick three days and left 36 minutes early one afternoon without permission; in November he called in sick one day, missed three hours work by leaving early one day and missed eight hours by leaving work early another day; and in December he called in sick five days and left one hour early another day. Sutton provided statements from doctors to justify his absences for all the dates above except the 36 minutes he left early one day in August. Sutton or his wife would call the Center to notify it that he would not be coming in. Many times they would not call in until after his shift had already begun. Sutton's reasons for the leave included bronchitis, sore throats, tooth aches, high blood pressure, a sore back, something in his eye, and illnesses of family members.

Frequently, the above sick leave days occurred immediately before or after regular days off. However, Sutton's schedule was such that only one out of eight days he worked was not immediately before or af-ter regular days off (the cycle of work consisted of two days of work, two days off, three days of work and two days off).

Sutton was permitted to use compensatory or annual leave for absences due to illness when he had no sick leave left, and his leave requests for all the absences during the six months before he was fired were approved by his superiors except the 36 minutes in August.

Sutton was terminated on 21 December 1984 because of his "[h]abitual pattern of failure to report for duty at the assigned time and place." At that time, he had seven and one-half hours in accumulated compensatory time, 27 hours in annual leave, and no sick leave. During the five years immediately preceding his dismissal, Sutton had been absent or had an incomplete work day 94 times and had missed 874 hours of work.

Sutton appealed his dismissal through the civil service grievance system. This resulted in a hearing before the Civil Service Commission. The Commission upheld the dismissal, as did the Davidson County Chancery Court. Sutton then appealed to the Court of Appeals. The Court of Appeals reversed in a 2 to 1 decision. Permission to appeal to this Court was granted under Rule 11, Tenn.R.App.P.

Sutton argues and the Court of Appeals found that the sick leave statute "creates a presumption that the legislature intended that the sick leave provided to state employees may be used, and not just accumulated, without fear of dismissal." Defendants argue that the above sections of the code do not govern dismissals and that the leave provisions simply permit state employees to be paid during their absences from work, and insists that terminations of employment are governed soley by T.C.A. § 8–30–326 and the Civil Services Rules. I agree with defendants.

The civil service section of the code states, "An appointing authority may dismiss any employee in his division when he considers that the good of the service will be served thereby." T.C.A. § 8–30–326(a). The Civil Services Rules and Regulations that were in effect at the time of appellee's

dismissal provided, in relevant part as follows:

> (e) Habitual and improper use of sick leave privileges;
>
> (f) Habitual pattern of failure to report for duty at assigned time and place.

Although appellee was previously disciplined under subsections (e) and (f), his termination only cited (f) as the cause.

This case is one of first impression in this State, however, a few other jurisdictions have addressed the issue. In *Diaz v. U.S. Postal Service*, 658 F.Supp. 484 (E.D.Cal. 1987), a federal employee was fired for unsatisfactory attendance at work. The employee missed thirty-six days in two years, half of which were attributed to a back injury caused by a war injury and an on-the-job injury. When he was at work the employee was able to perform the full duties of his job. The administrative board found that since the sick leave taken by the employee was approved these absences could not be used to remove him. The court reversed by holding that "a Federal employee's sick leave absences which were approved, may be used to prove unsatisfactory attendance if the employee had been given adequate notice regarding the gravity of his irregular attendance." *Id.* at 490–491. Other courts have utilized the finding of adequate warnings to affirm the dismissal of state employees for excessive absences. *See Hahn v. University of Cincinnati*, 22 Ohio Misc.2d 38, 489 N.E.2d 1081, 1082 (Ohio Com.Pl.1985); *Sargeant v. Director, Brooklyn Developmental Center*, 84 A.D.2d 843, 444 N.Y.S.2d 674, 676 (1981), *aff'd*, 56 N.Y.2d 628, 450 N.Y.S.2d 482, 435 N.E.2d 1097 (1982); and *North Carolina A & T Univ. v. Kimber*, 49 N.C. App. 46, 270 S.E.2d 492, 494 (1980). Also, a statement from a doctor will not always save the employee's job. *See Williams v. Civil Rights Div. of Bureau of Labor*, 30 Or.App. 983, 568 P.2d 707 (1977).

In *Hahn v. University of Cincinnati*, 22 Ohio Misc.2d 38, 489 N.E.2d 1081 (Ohio Com.Pl.1985), the court found that a state employee's absences were so frequent that it significantly impaired her ability to perform her duties. As a result, the court affirmed her dismissal. The court found that "[t]he keystone of the arch in the structure of our civil service law [is] fitness and efficiency." *Id.* 489 N.E.2d at 1082. It was also held that "the illness substantially impaired appellant's ability to efficiently and effectively discharge her duties at the parking office." *Id.*

The idea of fitness and efficiency is similar to the Tennessee statutory authority to dismiss for "the good of the service." T.C.A. § 8–30–326(a). In *Reece v. Tennessee Civil Service Comm'n*, 699 S.W.2d 808, 813 (Tenn.App.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1207, 89 L.Ed.2d 319 (1986), the court explained the principle behind the statute by stating:

> It must be conceded that the public payroll cannot be made a haven for those who with or without fault have become unable to perform the duties for which they were employed. It must likewise be conceded that "the good of the service" may in proper cases justify or require the discharge of public employees when their efficiency or usefulness in their positions has been seriously impaired by their own fault, by the fault of others, or by blameless misfortune.

> . . . . .

> The members of this Court sympathize with any employee who may be discharged without proof of misconduct; but the interest of the public requires this sacrifice of public employees when their usefulness has been seriously impaired with or without fault.

I am in complete agreement with the following portions of Judge Koch's opinion, dissenting in the Court of Appeals:

> While Tenn.Code Ann. § 8–50–101(b)(1) and the corresponding civil service rules require appointing authorities to grant sick leave to any employee who submits a doctor's certificate, they do not prevent state departments and agencies from dismissing an employee for habitual tardiness and absenteeism because of frequent, unscheduled use of sick leave. The State's sick leave policies and its power to discipline employees for tardiness and absenteeism should be viewed

separately, just as they are in the private sector. *See Celanese Piping Sys., Inc. v. General Drivers Union, Local 89*, 66 Lab. Arb. (BNA) 674, 676 (1976) (McIntosh, Arb.).

. . . .

There is substantial and material evidence that Mr. Sutton has habitually failed to report at the assigned time and place. There is also substantial and material evidence that his superiors have been lenient and patient with him and have given him every opportunityto overcome his attendance problems. Without question, Mr. Sutton's superiors have counseled with him repeatedly and have warned him on many occasions that his continued tardiness and absence would result in discipline and dismissal.

Mr. Sutton's dismissal was preceded by three suspensions without pay in addition to three written warnings. Thus, the record clearly shows that Greene Valley has followed the required progressive disciplinary steps and has provided Mr. Sutton with the due process rights required by Tenn.Code Ann. § 8–30–326(a) and the civil service rules. This Court should require the institution to do no more.

## V.

For these reasons, I would find that Tenn.Code Ann. § 8–50–101(b) does not prevent a state agency from terminating an employee who is habitually tardy or absent because of frequent, unscheduled use of sick leave. While the use of sick leave in this manner may not be abuse of sick leave in the technical sense, it provides more than sufficient grounds to find that Mr. Sutton has habitually failed to report for duty at the assigned time and place. Mr. Sutton's dismissal was for merit reasons and was for the good of the service.

I would reverse the judgment of the Court of Appeals and affirm the trial court and Civil Service Commission. I am autho-

rized to state that Justice O'Brien concurs in this dissenting opinion.