319 S.W.2d 481 (1958)
Raymond L. HUGHES
v.
BOARD OF COMMISSIONERS OF CITY OF CHATTANOOGA, Tennessee, et al.
Supreme Court of Tennessee.
December 12, 1958.
*482 McClure & Moore, and Don Moore, Jr., Chattanooga, for appellant.
Ellis K. Meacham, Chattanooga, for appellees.
BURNETT, Justice.
This is an appeal by Mr. Hughes from the action of the Chancellor in affirming the prior action of the Board of Electrical Examiners of the City of Chattanooga which was in due course, prior to reaching the Chancellor, affirmed by the Mayor and Board of Commissioners of the City of Chattanooga. The questions involved on this appeal are divided into two phases. The first of these is what action the Court can take in reference to the action of the Board of Electrical Examiners of the City of Chattanooga which was in turn affirmed by the Mayor and the Commission of Chattanooga. There are a number of assignments presenting this question one way or another. The second question involved herein is whether or not Chapter 15 of the Code of the City of Chattanooga which created the Board of Electrical Examiners is constitutional. All of these questions have been ably briefed and argued at the Bar of this Court and we now have the matter for determination.
Under the first question involved the petitioner alleges that the Board of Electrical *483 Examiners of the City of Chattanooga has refused to issue him a Class 1 Electrical Contractor's license despite the fact that he was fully qualified by long experience and training; that he has taken the examination by this Board some two or three times and that the examination consists of three parts which he alleges that he passed two of these parts but he failed on the third and that the examining board illegally and improperly required him to retake all three parts of the examination prior to the lapse of a year from his first examination. He likewise says that from this action of the Electrical Board he appealed to the Board of Commissioners of the City of Chattanooga but this Board dismissed his appeal. He says their action in dismissing the appeal was unreasonable, arbitrary and illegal.
The record fails to show any arbitrary or illegal action on the part of either of these Boards. The record likewise shows that this man took the examination in January of 1956 and made on the respective parts, 68%, 38%, and 77% when a passing grade of 70% is required in all three parts of the examination. He again took the examination in the Spring of 1956 and this time made grades of 60% 70%, and 77% and on each occasion he was denied a license because his grades on each part did not come up to the required 70%. One of the rules which the Board of Examiners had adopted prior to this examination required all applicants to pass all portions of the examination at one sitting and provided that upon failure to do so, the applicant, upon re-examination, should take and pass all three portions of the examination. This rule of the Board is questioned and assigned as an arbitrary and illegal rule of the Board and their action thereunder is asked to be reversed.
The examinations given by this Board to this petitioner were standard in form, prepared by vocational guidance and educational professors of Purdue University designed to test the knowledge of an electrical contractor and were not vague, unfair or susceptible of more than one correct answer, is the contention of the Board. The petitioner does contend that some of these questions were susceptible of more than one correct answer. Be this as it may the Board though may make up such rules and regulations as it sees fit and if there is no illegal and arbitrary action in preparing the examinations therefor the Courts cannot overrule the action of the Board.
It is shown in the record and contended by the Board and the City that public safety in an urban community like Chattanooga requires that all electrical wiring, fixtures and installations be installed under the supervision of a properly qualified electrical contractor and that if such installations were made by unqualified persons this would endanger the community by reason of a fire or electrical shock to users of the installations. It is thus contended by the City that under the general police powers given it under its charter that it was the duty and obligation to set up reasonable standards for enforcing electrical installations, etc., for the protection of the lives and property of its citizens.
The Chancellor in answer to this question made this very pertinent observation:
"The determination of what questions should be asked applicants for Class 1 Electrical Contractor's license is not a legal function, but an administrative function for the determination of the Board of Electrical Examiners of the City of Chattanooga. From the evidence in the case, this Board made no exception in its procedure as to the examination given to the petitioner. In other words, under the rules of this Board, it was not sufficient for an applicant to pass successfully part one of the examination at one sitting, then pass part two at a subsequent examination and finally to pass part three at a third examination. The Board *484 required all applicants to pass all three parts of the examination at one sitting."
The able Chancellor further found:
"It is plain that the Board of Electrical Examiners had proper jurisdiction of the subject matter; that they have exercised that jurisdiction in an impartial manner and there is not one scintilla of evidence that the Board acted in excess of its jurisdiction or had acted illegally, arbitrarily or fraudulently."
We have examined this record and concur fully in this statement of the Chancellor. There is nothing pointed out in the argument and briefs or does the record show where this Board has in any way made any exception of this applicant. There is likewise no showing that this examination was any other than that given to all applicants or that the examination is arbitrary or fraudulent in any manner.
In cases of the kind now before us the Courts will not interfere with the actions of the Board in their determinations of questions of this kind unless,
"the determination is without or in excess of the statutory powers and jurisdiction of the administrative authority, the determination is an exercise of power so arbitrary or unreasonable as virtually to transcend the authority conferred, or is otherwise as abuse of discretion, or is in disregard of the fundamental rules of due process of law, as required by constitutional or statutory directions, as where made without adequate notice, fair hearing, and opportunity for the aggrieved party to present evidence, or in an otherwise irregular proceeding, or is tainted with matters which disclose fraud, mistake, bad faith, corruption, or collusion, or is based upon an error of law." 42 Am.Jur., p. 611, Sec. 209.
The author of American Jurisprudence on this subject continues thus:
"As a general proposition, only the questions above stated are open to judicial review, and where no such question exists, administrative determinations of fact, or determinations made in the proper exercise of discretionary or administrative, legislative, executive, or judicial functions, or of exclusive or primary jurisdiction, vested by the legislature in administrative authorities, are conclusive upon the courts. * * * The court has nothing to do with the wisdom or expediency of the measures adopted by an administrative agency to which the formulation and execution of state policy has been intrusted, and must not substitute its judgment or notions of expediency and fairness or wisdom for those which have guided such agency, even where the proof is convincing that a different result would have been better. These are matters left by the legislature to the administrative `tribunal appointed by law and informed by experience.'" 42 Am.Jur., p. 621.
This Court has in effect affirmed and adopted the principles thus enunciated and quoted from American Jurisprudence in the well considered opinion of Hoover Motor Express Co. v. Railroad & Public Utilities Comm., 195 Tenn. 593, 261 S.W.2d 233. We think the rule sound. It is a rule that has been adopted by practically every jurisdiction in the United States and we are satisfied that it is applicable herein. This being true the assignments presented under this question must be overruled.
Mr. Justice Brandeis, speaking for the Supreme Court of the United States in Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 305, 67 L.Ed. 590, made this very brief statement which is applicable herein.
"And a Legislature may, consistently with the federal Constitution, delegate *485 to such board the function of determining these things, as well as the functions of determining whether the applicant complies with the detailed standard of fitness. Reetz v. [People of State of] Michigan, 188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 563."
The Legislature of the State of Tennessee by Chapter 572 of the Private Acts of 1933 authorized the municipality of Chattanooga to enact such electrical examining ordinances as in its discretion might be necessary to safeguard its citizens and property. Pursuant to this authority the City did enact Chapter 15 of the Code of the City of Chattanooga of 1949. This Chapter is attacked herein as being unconstitutional because violative of Article 1, Section 8, and Article 11, Section 8, of our Constitution, in that it grants rights, privileges, immunities and exemptions to certain corporations or others that were not extended to other persons or groups of persons or to partnerships.
The ch. provides that no person shall engage in installing these electric wirings, etc., and then the concluding sentence of this paragraph is:
"* * * provided that no license shall be required in order to institute any of the following classes of work:
"(c) The installation, alteration or repair of electrical wiring, devices, appliances, or equipment installed by or for an electrical public service corporation, for the use of said corporation in the generation, transmission, sale or use of electrical energy, or for use of such corporation in the operation of signals, or the transmission of intelligence.
"(f) The maintenance and repair of electrical equipment by manufacturing concerns through employees."
To the contrary the Electrical Board of the City contends that this is a reasonable classification.
It is a general rule of law which is applicable in this State that when an Act of the Legislature applies to all who come within the defined terms of the statute, all are treated alike, accorded the same privileges and subject to the same restrictions, a limitation as to certain reasonable exemptions come thereunder will not be held unreasonable and arbitrary as in violation of the sections of the Constitution referred to. As authority for this proposition see our case of Saunders v. Swann, 155 Tenn. 310, 292 S.W. 458.
Classification of businesses and occupations and callings like electrical contractors and other things of the kind which deal with the public may be classified by ordinance whenever the partial application or discrimination in the classification is based on real and reasonable distinctions existing and affects all persons of the same class or pursuing the same conditions under the same circumstances. In the first place the classification as given by the legislative body in enacting this Chapter 15 is entitled to great weight and of course will not be set aside by the Court unless it is clearly arbitrary and capricious and unreasonable class legislation. This then brings us to the reasons for the exemptions made in this statute. In other words let us look at them and see whether or not they are unreasonable exemptions from the operation of this statute.
In the first instance the Board, that is the Electrical Board that is now being attacked consists of seven residents of the City including a graduate electric engineer, an educator or teacher, a member of the Electrical Contracting industry, a journeyman electrician of ten years experience, an employee of the Chattanooga Electric Power Board with ten years experience, a representative of the Tennessee Inspection Bureau, and a representative of the general public but not connected with the electrical industry. Clearly it is hard to imagine a board with broader experience and one that could be said to be partial to anyone. It clearly looks from a Board *486 made up of the kind of a cross section of the citizens and of the citizens with a peculiar knowledge in reference to this industry as well as others, that the Board is of a broad breadth and there is nothing that could be said to be unfair in this Board.
The exemptions here apply to every person, partnership or corporation which can bring itself within those provisions. The petitioner here does not seek to bring himself within any of those provisions.
It is very ably argued that this statute is an unconstitutional regulation of this profession or occupation, because these exemptions quoted above are without any reasonable basis of distinction, and as authority for this proposition the appellant cites the case of Matill v. City of Chattanooga, 175 Tenn. 65, 132 S.W.2d 201. The reading of this case though clearly shows why and how this Court held the statute there unconstitutional, because that statute granted immunity to corporations which it did not grant to individuals, firms or partnerships who were engaged in the same business. The exemptions in the present statute are for the public service corporation which is owned by the City and naturally and obviously their employees were expected to have requisite knowledge and the legislative body could reasonably think that they were well qualified to do this work otherwise the City would not own and hold them out as such. Consequently it is not necessary for them to have a license. In the other exemption it is for manufacturing concerns, it is to exempt their employees for doing work within their own plant or manufacturing concern. Clearly it seems to us that these exemptions are a reasonable classification to take them out of the requirement of the general statute and not an unreasonable or arbitrary matter so as to make the general act unconstitutional.
All of us know that persons who do connect or have anything to do with putting in various electrical fixtures and things of that kind in the property, and especially in large urban areas where there are a lot of houses close together, that unless they know what they are doing the public is liable to be very much endangered. Houses can be burned up and people electrocuted and various and sundry things of the kind that we as a Court can and do take judicial knowledge of having happened when these electrical gadgets or what-not are attempted to be fooled with by one who lacks the necessary requisite knowledge to handle these electrical things. This being true clearly under the police power given the City of Chattanooga in its charter the City has the right to make reasonable regulations to license those who do electrical work in the corporate limits of the City.
We have carefully considered this matter and are well satisfied that the judgment below is correct and must be affirmed with costs.