# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE
_____

| | | |
|---|---|---|
| **TENNESSEE DEPARTMENT OF HUMAN SERVICES**, | ) ) ) | Davidson County Chancery Court Rule No. 94-2309-I |
| Plaintiff/Appellee. | ) ) | |
| VS. | ) ) | C.A. No. 01A01-9504-CH-00143 |
| **TENNESSEE CIVIL SERVICE COMMISSION and FRANK MAHON**, | ) ) ) | |
| Defendant/Appellant. | ) ) | |

FILED

Oct. 4, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

From the Chancery Court of Davidson County at Nashville.
**Honorable Irvin H. Kilcrease, Jr., Chancellor**

**Larry D. Woods**, Nashville, Tennessee
Attorney for Defendant/Appellant Frank Mahon.



**William B. Russell, Jr.**, General Counsel
Tennessee Department of Human Services
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED**


**FARMER, J.**



**CRAWFORD, J.** : (Concurs)
**KOCH, J.** : (Concurs)

This appeal arises from the chancery court's reversal of a final order of the Tennessee Civil Service Commission (the Commission). The Commission's final order reinstated Appellant, Frank Mahon, an employee who had been dismissed by the Cocke County Department of Human Services (Cocke County DHS). The chancery court reversed the Commission's final order, finding that the final order was unsupported by substantial and material evidence in the record before the Commission.

The pertinent facts are as follows: In May 1983, DHS hired Mr. Mahon as an eligibility counselor in the family assistance unit of its Cocke County office. He was a native of New Jersey, who had served twenty-five years in the military prior to his employment with DHS.

Mr. Mahon's job required him to interview applicants to determine eligibility for AFDC benefits, food stamps and Medicaid, to document and to organize case records, and to make appropriate referrals to other agencies. Mr. Mahon signed a DHS Job Performance Plan when he first began his job. The Job Performance Plan required eligibility counselors to have an interviewing style that did not create hostility in clients, to always treat clients with respect, and never to use harsh or abusive language with clients.

On Mr. Mahon's initial performance review, his supervisor noted that Mr. Mahon's interviewing techniques "tend to create some hostility" in clients. On his next two annual reviews, Ralph Samples, Mr. Mahon's supervisor, noted a problem with his interviewing skills, stating that at times Mr. Mahon appeared impatient, discourteous, and abrasive. In 1985, Mr. Samples described Mr. Mahon's personality as abrasive and stated that Mr. Mahon "needs to exercise more self-control in interviews." In July, 1986, Mr. Samples gave Mahon an oral warning concerning his behavior toward clients during interviews.

In 1986, Ella Ford became Mr. Mahon's supervisor. Between 1986 and 1988, all of Mahon's performance evaluations indicated continued problems with interviewing. In 1987, Ms. Ford noted that "some clients feel he is somewhat demanding and insensitive. . . . During an interview Frank can exhibit some impatience and lack of consideration." Later that same year, Mr. Mahon attended a training session on interview techniques. The Cocke County DHS, however,

continued to receive complaints from clients and employees of other agencies that Mahon had been "rude" or "hateful."

After receiving eleven such complaints, Ms. Ford gave Mr. Mahon a written warning, which he appealed to the Commissioner of DHS, Nancy-Ann E. Min. Commissioner Min upheld the warning, noting Mr. Mahon's previous oral warning and the numerous complaints received since that time. Commissioner Min reminded Mr. Mahon that "[f]urther disciplinary action may include suspension, demotion, or dismissal," and that "if circumstances warrant, any step of these procedures may be bypassed."

Three more complaints were received, and Mahon was given a three-day suspension in February, 1989. He began receiving counseling after this suspension and no other complaints were received until 1991.

In July, 1991, an employee of the Department of Youth Development complained to the Cocke County DHS office about Mahon's behavior. In September, 1991, an employee from Douglas Cherokee Economic Authority called Larry Butler, the Cocke County DHS Director, to complain that Mahon's behavior had been "domineering" and "frightening" during a telephone conversation in which Mahon had accused the employee of "cheating" on behalf of one of Mahon's clients. When Mr. Butler approached Mr. Mahon about this telephone conversation, Mr. Mahon first admitted that he had been unprofessional. However, later in the same conversation, he became loud and argumentative with Mr. Butler. After these incidents, Mahon received a second three-day suspension in late October, 1991.

In March, 1992, another client complained to Ms. Ford that Mr. Mahon was "rude and short-tempered." On Mahon's April, 1992, performance evaluation he received a 2, or marginal, score on "Interviewing" and another 2 on "Contributions to Departmental Objectives."

In the spring and summer of 1992 following his second suspension, the Cocke County DHS office continued to receive complaints about his behavior. Clients reported that Mr. Mahon "treats me like a dog and not a human," "treats me like trash," and that he is "one of the most

unpleasant people I have ever met."

On June 12, the district program director from Knoxville and Ms. Ford's supervisor from Johnson City spoke to Mr. Mahon about his performance. At the meeting, Mahon maintained that he had never been impolite to anyone. He was told that if further complaints were received about his behavior toward clients, he would be dismissed.

On July 6, 1992, Mr. Mahon interviewed an elderly client who became extremely upset during the interview. The woman's niece, who had attended the interview, said that Mahon had been "rude" and "sarcastic." On July 7, 1992, another of his clients called Ms. Ford to complain. The client described Mr. Mahon as "snotty," "hateful," "cocky" and having a "smart-aleck" attitude and treating her "like trash." Another client called to complain the same day.

On July 14, Ms. Ford recommended Mr. Mahon's dismissal. On August 6, the Commissioner of the Department of Human Services formally dismissed him. The dismissal was based on the good of the service and on failure to maintain satisfactory and harmonious working relationships as set forth in T.C.A. § 8-30-326 and Chapter 1120-10-.06(4) of the Rules of Tennessee Department of Personnel.

Mr. Mahon appealed to the Commission. Among the many witnesses were a number of Mahon's clients who testified regarding his abrasive behavior. Additionally, his supervisors described their attempts to motivate him to improve his interviewing style, and their application of progressive discipline, which had consisted of oral and written warnings and two suspensions.

A number of Mr. Mahon's co-workers testified on his behalf, stating that he had a loud, gruff voice that clients interpreted as unfriendly. They stated, however, that they had never observed Mr. Mahon behaving inappropriately with clients.

The Administrative Law Judge (ALJ) concluded that DHS had carried its burden of proving that Mr. Mahon had failed to maintain satisfactory and harmonious working relationships. However, the ALJ attributed Mr. Mahon's difficulties to a personality conflict with Mr. Butler, the

high stress-level of his position, and his health problems. The ALJ determined that the proper remedy would be a two-week suspension rather than termination. Consequently, the ALJ awarded Mr. Mahon one-half of his back pay, and ordered that he be reinstated as Eligibility Counselor.

The Commission affirmed the ALJ's decision with minor revisions. DHS appealed the Commission's ruling to the Chancery Court for Davidson County pursuant to the Uniform Administrative Procedures Act, T.C.A. § 4-5-322. The chancery court reversed the Commission, finding that, "when viewing the record as a whole, there is no substantial and material evidence to indicate that a longer suspension would serve any purpose."

We perceive the sole issue on appeal to be whether the chancery court complied with the standard of review required by T.C.A. § 4-5-322(h). In reviewing the Commission's decision, the chancellor was governed by T.C.A. § 4-5-322(h) which sets forth the standard of review on appeal of administrative proceedings as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The scope of review in this Court is the same as in the trial court, to review findings of facts of the administrative agency upon a standard of substantial and material evidence. *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664 (Tenn. 1977); *DePriest v. Puett,* 669 S.W.2d 669 (Tenn. App. 1984). Thus, substantial and material evidence is required to sustain the action of an administrative tribunal. *Pace v. Garbage Disposal Dist.,* 54 Tenn. App. 263, 267, 390 S.W.2d 461, 463 (1965). What amounts to "substantial and material" evidence as

contained in T.C.A. § 4-5-322(h) is not clearly defined in the statute. Generally, the standard requires "something less than a preponderance of the evidence," *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. App. 1988); *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026 16 L.Ed.2d 131 (1966), "but more than a scintilla or glimmer." *Wayne County*, 756 S.W.2d at 280; *Pace,* 390 S.W.2d at 463.

The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *Pace,* 390 S.W.2d at 463.

T.C.A. § 4-5-322(h) allows the reviewing court, in determining the substantiality of the evidence, to take into account whatever in the record fairly detracts from its weight. T.C.A. § 4-5-322(h). However, the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. *Id.* This is true even when the evidence would support a different result. *Hughes v. Board of Comm'rs*, 204 Tenn. 298, 319 S.W.2d 481 (1958).

Applying the narrow scope of review required by T.C.A. § 4-5-322(h), we believe that the chancery court was correct in reversing the Commission's decision to reinstate Mr. Mahon after a two-week suspension.

The record before the ALJ and the chancery court clearly showed that throughout Mr. Mahon's nine-year employment, Mr. Mahon had received low grades in respect to his interviewing skills on his yearly performance evaluations. These low grades had come under two different supervisors. Both supervisors had counseled Mr. Mahon about his continued abrasive behavior toward clients. Additionally, one month prior to his dismissal, Mr. Mahon's district director warned Mr. Mahon that he would be dismissed if his interviewing techniques did not improve.

The ALJ found that DHS had met its burden of proving by a preponderance of the evidence that Mr. Mahon failed to maintain a satisfactory and harmonious working relationship with his clients. The ALJ further recognized that the failure to maintain a satisfactory and harmonious

working relationship with clients was an example of a ground for discipline under Chapter 1120-10-.06(4) of the Rules of Tennessee Department of Personnel. However, the ALJ ruled that DHS had not met its burden in proving that dismissal was an appropriate discipline for the "good of the service" as required by T.C.A. § 8-30-326(a).[1]

We agree with the chancery court and hold that DHS carried both its burden in proving Mr. Mahon's failure to maintain a satisfactory and harmonious working relationship with clients and its burden in proving that dismissal was an appropriate discipline in the instant case.

The evidence presented before the ALJ showed that for nine years Mr. Mahon had been either unwilling or unable to change his interviewing style to correspond with DHS requirements. Moreover, in most instances, Mr. Mahon refused to admit that there was a problem with his interviewing technique. In total, Mr. Mahon received two oral warnings, a written warning and two three-day suspensions. However, he never showed any signs of permanent improvement.

A fundamental requirement of Mr. Mahon's job was that he deliver DHS services in a professional, unoffensive manner. While it is undisputed that Mr. Mahon handled all other areas of his work efficiently and effectively, it is undeniable that his behavior in regard to his clients and other agencies, whether intentional or not, was a source of constant complaints to the Cocke County DHS. It is equally clear that Mr. Mahon's various idiosyncrasies have made it impossible for him to maintain satisfactory and harmonious relationships with his supervisors, other agencies and the public. This record discloses a long history of progressive discipline coupled with no overall improvement in Mr. Mahon's interviewing techniques. There is no evidence that a two-week suspension would help to reform Mr. Mahon. In fact, at the hearing before the ALJ, Mr. Mahon stated that, if he were allowed to return to work, he likely would again become frustrated with his job at the Cocke County DHS in another year or two. Nothing else in the record suggests that Mr. Mahon is willing or able to be permanently reformed. Therefore, we believe the chancellor properly

---

[1]T.C.A. § 8-30-326(a) provides in pertinent part:
(a) An appointing authority may dismiss any employee in the authority's division when the authority considers that the good of the service will be served thereby.

reversed the final order of the Tennessee Civil Service Commission that ordered the reinstatement of Mr. Mahon.

The decision of the chancery court is affirmed.  Costs are taxed to the appellant, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, J. (Concurs)


_____
KOCH, J. (Concurs)