IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2019 Session

## ERIC DUBUCLET v. TENNESSEE DEPARTMENT OF HUMAN SERVICES

**Appeal from the Chancery Court for Davidson County**
No. 17-878-III      Ellen H. Lyle, Chancellor

———————————————————

**No. M2018-01309-COA-R3-CV**

———————————————————

The Tennessee Department of Human Services denied Supplemental Nutrition Assistance Program benefits to a two-person household based upon its determination that the household's income exceeded the eligibility requirements. After a final order was entered by the Department, the household petitioned the Chancery Court of Davidson County for review pursuant to Tennessee Code Annotated section 4-5-322. The Chancellor affirmed the decision of the agency and dismissed the petition for judicial review; the household appeals the decision. Upon our review, we affirm, finding that the Department's decision was not in violation of constitutional or statutory provisions, arbitrary or capricious, in excess of statutory authority, made upon unlawful procedure, or unsupported by substantial and material evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which JOHN WESLEY MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Eric A. Dubuclet, Antioch, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; and Erin A. Shackelford, Assistant Attorney General, for the Tennessee Department of Human Services.

## MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum

This appeal invokes our review, pursuant to Tennessee Code Annotated section 4-5-322 and -323, of the decision of the Tennessee Department of Human Services to deny Supplemental Nutrition Assistance Program ("SNAP") benefits to Eric and Glenda Dubuclet on the basis that their household income exceeded federally-mandated eligibility requirements for their household size.

Eric Dubuclet is a resident of Antioch and conservator of his wife Glenda, who is disabled following a brain injury she suffered while giving birth in the late 1970s. The Dubuclets previously lived in Louisiana, where Mr. Dubuclet petitioned the Civil District Court for a "limited interdiction" of Mrs. Dubuclet, which was granted, resulting in his appointment as "Curator of the person of Glenda Dubuclet."[2] The Dubuclets moved to Tennessee after Hurricane Katrina and at some point, applied for and were approved for

---

opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] A curator is synonymous with the Tennessee concept of a "conservator," which our Code defines as "a person . . . or an entity appointed by the court to exercise the decision-making rights and duties of the person with a disability in one or more areas in which the person lacks capacity as determined and required by the orders of the court." Tenn. Code Ann. § 34-1-101(4)(A) (2013). The 1992 order of the Civil District Court of Orleans Parish in Louisiana appointing Mr. Dubuclet as Curator of his wife was filed in the Chancery Court as an exhibit to his petition for review but it does not appear to be an authenticated copy, as required by Tennessee Code section 26-6-104 and Rule 3A of the Tennessee Rules of Civil Procedure in order to be afforded full faith and credit. Nevertheless, the parties do not dispute that the judgment ordered the following:

. . . that Eric Dubuclet be appointed curator of the person of his wife, Glenda Dubuclet, to act on her behalf in the litigation filed herein, against Touro Infirmary, Dr. John Davis and Dr. Victor Brown, . . . as well as to make decisions on her behalf, with the advice of counsel, as to this litigation, and as to settlements, partial or otherwise, all subject to the approval, and Orders of Court;

IT IS FURTHER ORDERED, that after any such settlement is made and approved by the Court, and funds are to be paid to, or for, Glenda Dubuclet, as a result of settlement, partial or otherwise, or as a result of a Judgment, in the litigation, that all such funds, are then to be placed in the care and custody of, the Alerion Bank, Trust Department, New Orleans, Louisiana, which is hereby appointed as curator of the property of Glenda Dubuclet, without need of bond, for the purpose of making disbursement of such funds, paying attorney's fees, and costs, pursuant to orders of the Court and thereafter, investing, and managing the funds remaining; and that Eric Dubuclet, as curator of the person of Glenda Dubuclet, be permitted to handle the routine monthly, expenditures required by Mrs. Dubuclet for her needs and for sustenance particularly, to handle her teachers' retirement and social security pension checks, the Court finding that the expenditure of such funds, approved by the Court, is for such necessary expenditures, for the food, clothing, shelter, and welfare of Glenda Dubuclet, all subject to the continuing supervision, and further Orders of this Court.

food stamps through SNAP. On March 27, 2017, Mr. Dubuclet received notice that the household's SNAP benefits were being terminated on April 30, 2017, because the Tennessee Department of Human Services' ("the Department") had determined that Glenda received retirement income that, when included as part of the household's income, caused the household income to exceed the federally-mandated monthly income standards to remain eligible for SNAP benefits.[3] Mr. Dubuclet appealed the termination and requested a fair hearing, which was held by telephone on May 2, 2017. During the hearing, and through evidence he submitted afterwards, Mr. Dubuclet argued that he receives no income and that Mrs. Dubuclet's pension and disability income should not be attributed to the household because she is disabled and the subject of a conservatorship, and thus all the money she receives "must be used on her."

The Hearing Officer entered an Initial Order on May 9, upholding the Department's decision to terminate the Dubuclets' SNAP benefits and holding that federal and state regulations do not grant an exception, as urged by Mr. Dubuclet, that would allow the Department to exclude Mrs. Dubuclet's income from the household budget. Mr. Dubuclet appealed the decision of the Hearing Officer, and in a Final Order entered June 16, the Commissioner's Designee concluded that the appeal should be denied. The Final Order adopted the decision of the Hearing Officer and incorporated his findings of fact and conclusions of law. Mr. Dubuclet filed a petition for judicial review of the Final Order in the Chancery Court of Davidson County on August 15.

On June 20, 2018, the Chancellor entered an order affirming the Final Order terminating the Dubuclets' SNAP benefits, concluding that the Department "decided this matter rationally based upon the applicable law governing the Supplemental Nutrition Assistance Program and the evidence in the record." Accordingly, the Chancellor held that the decision was not arbitrary or capricious, an abuse or unwarranted exercise of its discretion, or in excess of the Department's statutory authority, and that it was supported by substantial and material evidence.

Mr. Dubuclet appeals, pro se. At the outset of our consideration of this appeal, we observe that his brief fails to adhere to Rule 27 of the Tennessee Rules of Appellate Procedure in many respects. It contains no statement of issues raised, no table of contents, no table of authorities, no statement of the case, and no statement of the facts.

---

[3] In the Fair Hearing held on May 2, 2017, an agency representative testified that "Mrs. Dubuclet receives $1094.00 in teacher retirement and she also receives Social Security Disability of $928.00 [per month]"; that Mrs. Dubuclet's teacher retirement income had not previously been accounted for in determining whether the Dubuclets' household income met the income limits of the SNAP program; and that once the agency learned of the retirement income amount, "the net adjusted income was $1701.00, which is above the net income limit of $1335.00 for a household of two."

3

Rather, it is comprised of ten numbered paragraphs that we construe as argument.[4] His reply brief is of a similar nature. In spite of these deficiencies, which Appellee asserts merit the dismissal of the appeal, we exercise our "discretion to suspend or relax some of the rules for good cause" in order to consider the merits of this appeal. *Paehler v. Union Planters Nat. Bank*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997). We thus turn to the crux of the matter, which the Appellee has framed as follows: "Whether the trial court properly dismissed the petition for judicial review and affirmed the Department of Human Services' termination of Mr. Dubuclet's Supplemental Nutrition Assistance Program ("SNAP") benefits."

Our review of the Department's decision is governed by the standard set forth at Tenn. Code Ann. § 4-5-322(h):

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322. The limits of such review were explained in *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*:

> Courts defer to the decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise. Accordingly, judicial review of an agency's action follows the narrow, statutorily defined standard contained in Tenn. Code Ann. 4-5-322(h) rather than the broad standard of review used in other civil appeals.

---

[4] These ten numbered paragraphs are a verbatim recitation of the Statement of Evidence he submitted in the Chancery Court after this Court entered an administrative order directing him to file a transcript or statement of the evidence pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure. His statement of the evidence does not comply with Rule 24, as it does not contain a statement of what transpired during the hearing.

> The narrower scope of review used to review an agency's factual determinations suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency.

756 S.W.2d 274, 279 (Tenn. Ct. App. 1988) (internal citations omitted). "Courts do not review the fact issues *de novo* and, therefore, do not substitute their judgement [sic] for that of the agency as to the weight of the evidence, even when the evidence could support a different result." *Id.* (internal citation omitted) (citing *Humana of Tennessee v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664, 667 (Tenn. 1977); *Grubb v. Tennessee Civil Serv. Comm'n,* 731 S.W.2d 919, 922 (Tenn. Ct. App. 1987); *Hughes v. Board of Comm'rs,* 319 S.W.2d 481, 484 (1958)).

Mr. Dubuclet raises no issue with respect to the procedure employed by the Department in determining his eligibility, revoking his household's benefits, and conducting his appeal of that decision. He concedes that the agency's calculations are correct but argues that, because he is unable to use any of his Wife's funds for his benefit, the trial court erred in affirming the Department's decision denying his household's eligibility for SNAP benefits "by imputing the interdict's court-appointed funds as 'income' to the Curator." Mr. Dubuclet's position, as we understand it, is that because he is the Curator of his Wife and her full-time caretaker, he is actually a live-in attendant and thus a separate household for purposes of computing household income. He also asserts that the funds she receives are inaccessible and thus should not be treated as income. For the reasons set forth below, neither argument comports with federal and state regulations governing SNAP.

Title 7 of the United States Code deals with Agriculture, and Chapter 51 of that Title outlines the Supplemental Nutrition Assistance Program, which was authorized by Congress "[t]o alleviate . . . hunger and malnutrition" by "permit[ting] low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C.A. § 2011 (2008). "Participation in the supplemental nutrition assistance program shall be limited to those households whose incomes and other financial resources, held singly or in joint ownership, are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 U.S.C.A. § 2014.

The applicable federal regulations governing the SNAP program define a "household" as being "composed of one of the following individuals or groups of individuals, unless otherwise specified in paragraph (b) of this section" and lists three categories: an individual living alone, an individual living with others but purchasing food and preparing meals separate and apart from others, or a group of individuals who live together and customarily purchase food and prepare meals together. 7 C.F.R § 273.1(a). In paragraph (b), the regulation provides that spouses form a "required household combination" and "must be considered as customarily purchasing food and

5

preparing meals with the others [in the household], even if they do not do so, and thus must be included in the same household, unless otherwise specified." 7 C.F.R § 273.1(b)(1); *see also* Tenn. Comp. R. & Regs. 1240-01-02-.02(1)(a); Tenn. Comp. R. & Regs. 1240-01-02-.02(1)(b)(2) ("Separate household status shall not be granted to: . . . 2. A spouse of a member of the household.").

While a "live in attendant" may be treated as a separate household, spouses "must not be considered live-in attendants." 7 C.F.R. §273.1(b)(6) and (b)(1); *see also* Tenn. Comp. R. & Regs. 1240-01-02-.02(3)(c) ("Live-in Attendants. An "attendant" is an individual whose presence in the household is solely for medical, housekeeping, child care, or similar reasons and is not a part of the normal household composition."). The record contains substantial and material evidence that Mr. and Mrs. Dubuclet are married; thus, Mr. Dubuclet's arguments that he should be considered a live-in attendant of his Wife are without merit.

Mr. Dubuclet next argues that, because of the conservatorship, Mrs. Dubuclet's funds are inaccessible to the household and therefore should not be treated as income that prevents their SNAP eligibility; this is without merit. 7 C.F.R. § 273.9(a) provides that "Participation in the Program shall be limited to those households whose incomes are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet. Households which contain an elderly or disabled member shall meet the net income eligibility standards for SNAP." Subsection (b) of that regulation defines income to include "[a]nnuities; pensions; retirement, veteran's, or disability benefits." 7 C.F.R. § 273.9(b)(2)(ii). Thus, the monies received from Mrs. Dubuclet's retirement benefits and disability benefits are federally mandated to be counted as income. Additionally, income includes:

> Monies which are withdrawn or dividends which are or could be received by a household from trust funds considered to be excludable resources under § 273.8(e)(8). Such trust withdrawals shall be considered income in the month received, unless otherwise exempt under the provisions of paragraph (c) of this section. Dividends which the household has the option of either receiving as income or reinvesting in the trust are to be considered as income in the month they become available to the household unless otherwise exempt under the provisions of paragraph (c) of this section.

7 C.F.R. § 273.9(b)(2)(vi). Even held in trust, the record shows that the funds are available for her use, per the interdiction order and per Mr. Dubuclet's statements at the fair hearing; thus, the funds are not inaccessible and cannot be excluded from the household's income. 7 C.F.R. § 273.8(e)(8).

The Department is bound to comply with the above regulations in determining eligibility. 7 C.F.R. § 276.1(a)(4) ("State agencies shall be responsible for efficiently and

6

effectively administering the Program by complying with the provisions of the Act, the regulations issued pursuant to the Act, and the F[ood and] N[utrition] S[ervice of the U.S. Department of Agriculture]–approved State Plan of Operation. . . .”). The Department's decision does not violate any of the above statutory provisions or the constitution.

Lastly, Mr. Dubuclet argues that there is a conflict between the federal laws and regulations at issue and the interdiction order; there is no conflict. The funds Mrs. Dubuclet receives are to be used for her “food, clothing, shelter, and welfare,” per the interdiction order; however, because she has access to these funds (via her curator/conservator/trustee, Mr. Dubuclet) and because she is married, the SNAP regulations and State regulations concerning eligibility dictate that the amount of funds she receives be included as household income. The amount she receives causes the household's income to exceed the eligibility requirements, rendering their household ineligible to receive SNAP benefits.

We thus hold that the agency's decision does not violate constitutional or statutory provisions. Further, the record does not support a conclusion that the agency's conclusions and decisions were in excess of its statutory authority, made upon unlawful procedure, or arbitrary or capricious, and the agency's decision was supported by substantial and material evidence. Accordingly, we affirm the decision of the Chancellor affirming the Department's decision and dismissing the petition for judicial review.

_____
RICHARD H. DINKINS, JUDGE

7