HUMANA OF TENNESSEE, d/b/a
McFarland Hospital, Appellant,

v.

TENNESSEE HEALTH FACILITIES
COMMISSION et al., Appellees.

Supreme Court of Tennessee.

April 25, 1977.

William M. Leech, Jr., Columbia, for appellant.

Michael E. Terry, Asst. Atty. Gen., Nashville, James H. Kinnard, Lebanon, Mark A. Schneider, Nashville, for appellees.

## OPINION

HARBISON, Justice.

This case arises under the Tennessee Health Facilities Act of 1973, T.C.A. § 53–5401 et seq. After administrative procedures and hearings provided for in the statutes, the Health Facilities Commission granted a certificate of need to appellee University Medical Center, Inc., authorizing it to construct a sixty-five-bed specialty care hospital in Wilson County, Tennessee.

The application was opposed at all administrative stages by appellant, which owns and operates a 137-bed general care hospital in Wilson County. Appellant sought review of the final order of the Commission in the chancery court. After considering the records of the administrative hearings and additional evidence filed in court, the Chancellor affirmed the action of the Commission. Appellant seeks further review here.

Although the record reveals some procedural irregularities, no error sufficiently material or prejudicial to warrant reversal has been shown. Accordingly we affirm the judgment of the Chancellor.

Before discussing the specific assignments of error, we think it appropriate to summarize the procedural background.

### I. *History of the Litigation*

In January 1975 University Medical Center, Inc., a nonprofit corporation, filed its application with the Tennessee Health Facilities Commission, seeking permission to build a sixty-five bed hospital in Wilson County. As provided by T.C.A. § 53–5412, the Commission referred the application to an area-wide health planning agency, the Mid-Cumberland Comprehensive Health Planning Council. After a public hearing held on February 27, 1975, that agency recommended that the certificate be granted. Its recommendation was forwarded to the State Health Planning Agency for review, pursuant to T.C.A. § 53–5413, and the latter recommended approval by the Commission.

On March 25, 1975 the Health Facilities Commission considered the application in a review-and-comment session. At that time the application failed to receive six affirmative votes as required by T.C.A. § 53–5407. Only eight members of the Commission were in attendance. Of these, four voted for the application, two against, and two members abstained.

Pursuant to T.C.A. § 53–5415, the applicant was granted a public hearing before the Commission. This was held on May 29, 1975, at which time a number of witnesses testified. Following that hearing, the Commission approved the application by a vote of nine to one.

Appellant sought review of the decision of the Commission by petition for certiorari filed in the chancery court at Nashville on July 23, 1975. This was after the effective date of the Uniform Administrative Procedures Act, T.C.A. § 4–507 et seq., but the administrative hearings had been held before July 1, 1975, when most of the provisions of the Administrative Procedures Act went into effect.

Therefore, in the chancery court, the matter was treated as a certiorari proceeding, the Chancellor at one point holding that review would be had as under a "common law" writ of certiorari, T.C.A. § 27–801 et seq. Nevertheless, after the case had reached the chancery court, appellant took fifteen depositions, comprising nearly four hundred pages of testimony, calling as witnesses all but one member of the Health Facilities Commission, together with personnel on the staff of the Commission and an official of the Mid-Cumberland Comprehensive Health Planning Council.

These depositions were very wide ranging in scope, involving not only the procedures used before the respective agencies, but also inquiries of the various Commission members as to the reasons for their votes and the evidence they considered.

The Chancellor apparently reviewed all of these depositions, together with the records made before the administrative agencies, and after considering the numerous assignments of error made before him by appellant, he affirmed the action of the Health Facilities Commission in granting the application.

Appellant appealed to the Court of Appeals as under a certiorari proceeding, but after the cause reached that Court, appellant for the first time invoked the provisions of the Uniform Administrative Procedures Act and sought to have the cause transferred here pursuant to T.C.A. § 4-524. The Court of Appeals granted the motion, and we have concluded to allow the request of appellant to have the cause reviewed in this Court under the provisions of that Act.

■ The matter is not free from uncertainty, and it is possible that the case should be treated as a certiorari proceeding, as it began. This, however, might involve a remand to the Court of Appeals. More than two years have already been consumed in administrative and judicial proceedings since the filing of the original application for a certificate. Therefore, we believe it appropriate to dispose of the case here, despite its unusual procedural history.

## II. *Judicial Review Under the Administrative Procedures Act*

In the recent case of *Metropolitan Government of Nashville and Davidson County v. Shacklett*, released for publication at Nashville on January 24, 1977, the Court had occasion to consider the provisions of the Administrative Procedures Act governing judicial review, both in the chancery court and on appeal, T.C.A. §§ 4-523, 524.

There, it was noted that the provisions of T.C.A. § 4-523(h) provide for a limited review in the chancery court, rather than a de novo review upon the record. New evidence may be received in that court only in cases "of alleged irregularities in procedure before the agency, not shown in the record . . . ." T.C.A. § 4-523(g). Otherwise, review is confined to the record made before the administrative agency.

There are provisions for remand to the agency for further proceedings. On the record before it, however, the court may reverse or modify the decision of the agency only if it finds that the agency findings, inferences, conclusions or decisions are:

"(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) unsupported by evidence which is both substantial and material in light of the entire record." T.C.A. 4-523(h).

The statute further provides that in determining the "substantiality" of evidence the chancellor shall "take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."

■ In light of this language, it appears that the General Assembly intended that the trial court should review factual issues upon a standard of substantial and material evidence. The court is directed to consider the entire record, including any part detracting from the evidence supporting the findings of the administrative body. Nevertheless the trial court is not to review issues of fact de novo or to "substitute its judgment for that of the agency as to the weight of evidence . . . ."

The statute also contains a "harmless error" provision, stating that no agency decision in a contested case be reversed, remanded or modified "unless for errors which affect the merits of the decision complained of." T.C.A. § 4-523(i).

Appeals under the Act are taken directly to the Supreme Court "as in chancery

cases". T.C.A. § 4–524. In the *Shacklett* case, *supra*, however, the Court construed that phrase as follows:

"We do not believe that the drafters of the Administrative Procedures Act intended that there be a broad, or de novo, review in this Court of the decision of a trial judge, when his action, initially, is confined to a narrow and statutorily prescribed review of the record made before the administrative agency. We consider that it would be impracticable for this Court to afford any broader or more comprehensive review to cases arising under the Act than is afforded to them by the trial court in the first instance, except, of course, this Court can review for the first time any new or additional evidence introduced in the chancery court with respect to 'alleged irregularities in procedure' before the agency as provided in T.C.A. § 4–523(g). Therefore we do not deem the words 'as in chancery cases' contained in T.C.A. § 4–524 to be definitive of the scope of review to be given such cases in this Court, but merely as descriptive of the general procedure to be followed in bringing cases from the chancery court to this Court, where procedures are not otherwise expressly set out in the Administrative Procedures Act itself."

[3] Accordingly, insofar as appellant suggests a de novo review of the factual issues presented before the Commission, its assignments are not well taken. The record must be reviewed here, as in the trial court, under the statutory criteria.

### III. *Procedural Assignments of Appellant*

In this Court appellant has asserted, for the first time, that the record transmitted to the chancery court from the Health Facilities Commission was incomplete, in that it did not contain a copy of the final order of the Commission granting the certificate of need. There is no contention that the Commission failed to enter an order or to furnish the parties with copies. The omission of the final order apparently was never called to the attention of the Chancellor while the case was pending before him. Indeed, counsel for appellant concedes that the omission was not discovered until appellate briefs were being prepared.

Ordinarily, of course, the omission of the final decision of the Commission would be a serious matter. T.C.A. § 4–519 requires that a final decision or order in a contested case shall be in writing or stated in the record. The final decision must include findings of fact, conclusions of law and a statement of reasons for the ultimate decision. Further, the record in a contested case is required to include any decision, opinion or report by the agency or the officer presiding at the hearing. T.C.A. § 4–514(f)(6).

■ We have already noted that the present case has followed an unusual procedural course. In the chancery court, appellant was permitted to take extensive new evidence, not by any means confined to "irregularities in procedure before the agency, not shown in the record . . . ." as provided in T.C.A. § 4–523(g). Not only were the Commissioners and personnel of the agencies interrogated at length, but a copy of the deliberative session of the Commission, at which it decided to grant the application, was filed as an exhibit. Since all of this evidence was apparently considered by the Chancellor, and since no mention was made in the chancery court of the omission of the final order itself, we are of the opinion that appellant has waived this procedural irregularity and that no useful purpose would now be served by our remanding the case to the chancery court, with directions that the Commission supply a copy of the order for the record. Indeed, appellant almost concedes as much in its brief, and primarily relies upon other assignments of error for reversal. Under these circumstances, we overrule the assignments dealing with the omission of the final order of the Commission from the administrative record.

■ Appellant further insists that it was deprived of the right of cross-examination of witnesses before the area-wide agency, the Mid-Cumberland Comprehensive Health

Planning Council. In this regard, the record shows that a physician testified for the applicant, and was then required by reason of prior commitments to leave the hearing. It is not shown what evidence, if any, appellant expected to elicit from him by cross-examination. This witness was available and was cross-examined at a subsequent hearing before the Health Facilities Commission. Although T.C.A. § 53–5412(B) does provide for cross-examination of opposing witnesses before an area-wide health planning agency, we agree with the Chancellor that the denial of cross-examination to appellant under the above circumstances does not amount to reversible error.

■ The most serious assignment of error, from a purely procedural standpoint, deals with the receipt by members of the Health Facilities Commission of ex parte, informal, personal communications concerning the subject matter of the hearings. This practice is expressly prohibited by T.C.A. § 4–521—one of the sections of the Act, however, which had not taken effect at the time the administrative hearings involved in this case were being held. Several members of the Commission apparently had informal discussions with other persons prior to the final hearing on May 29, 1975, some of these being merely general inquiries but some of them dealing with the issue of the need for an additional hospital in Wilson County.

As noted by the Chancellor, none of the members of the Commission appear to have been motivated by anything other than a sincere desire to obtain information, and none of them acted for any improper purpose. Most of the information which they received was of a general nature, and all of it was cumulative to other testimony given at the formal hearing. The Chancellor noted that T.C.A. § 4–521 does not contain any express provisions as to the consequences of a violation, and a reviewing court should reverse under T.C.A. § 4–523(i) only if it finds that an error affected the merits of the decision complained of. Since the provisions of T.C.A. § 4–521 were not in effect at the time of the administrative hearings,

there was not an actual violation of the Act, and we can find nothing in the testimony of any of the Commissioners which would lead us to believe that information was received which materially affected their ultimate decision. We have previously noted that an affirmative vote of only six members was required under T.C.A. § 53–5407, while nine members actually concurred in the final decision which was reached. Only one member initiated any extensive discussions, and his actions were clearly well-intentioned and motivated only by a desire to render a conscientious decision. The assignments of error pertaining to this issue are, therefore, overruled.

■ Appellant contends that the administrative agencies had failed to promulgate adequate written criteria or guidelines for evaluating applications for certificates at the time of the hearings in question. This contention is not borne out by the record, which reveals both written guidelines and hearing procedures in effect when the hearings were held.

■ Appellant further assigns as error the absence of a public hearing by an adjacent area-wide agency, the Upper Cumberland Council, having jurisdiction over counties east of Wilson, from which the proposed facilities might receive patients. The terms of T.C.A. § 53–5412 provide for public hearings by only one area agency, and this assignment is overruled.

IV. *Substantive Assignments of Error*

As pointed out by the Chancellor, appellant's contentions on the merits of this case "when stripped to the bare essentials amount to an assertion that there is no evidence in the record to support the Commission's findings."

Appellant has taken issue with each and every aspect of the handling of the subject application, both before the area-wide agency and before the Health Facilities Commission itself. A review of the record makes it readily apparent that there was conflicting evidence offered in the administrative hearings, and evidence from which diverse inferences and conclusions could be drawn.

The Health Facilities Act, T.C.A. § 53–5411, contains the basis upon which a certificate of need may be issued and the criteria for certification of such need.

It provides:

"(A) No certificate of need shall be issued unless the action proposed in the application for such certificate is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services. Criteria for certification of need shall be prescribed by rules and regulations of the commission which shall take into consideration: (1) the availability of facilities or services which may serve as alternatives or substitutes; (2) the need for such equipment and services in the area; (3) possible economies and improvement in services to be anticipated in the operation of joint central services; (4) the adequacy of financial resources and sources of present and future revenue; (5) the availability of sufficient manpower in the several professional disciplines required; and (6) such other factors as may be established or required by federal regulations."

Despite appellant's sincere and thoughtful contentions to the contrary, we are of the opinion that there was substantial and material evidence offered on behalf of appellee with regard to each of the criteria, and that the Commission took all of these into consideration in reaching its decision.

One of the principal insistences of appellant is that the Commission granted the certificate simply because some sixteen physicians, practicing various specialties, wished to locate in Wilson County and would do so only if the facility under consideration were authorized. We do not find this to be the primary or sole basis upon which the Commission reached its decision, although we do note that one of the criteria for certification of need specified in the statute is "the availability of sufficient manpower in the several professional disciplines required . . . ." Accordingly the availability of medical personnel was a legitimate factor for the Commission to consider.

There is evidence in the record that a very large percentage of the citizens in the area to be serviced seek health care in Davidson County or in other areas, and this factor was given great weight, particularly by the area-wide agency in making its recommendation. Appellant contends that its general care hospital is more than adequate to meet the needs of the area to be served, and that secondary and tertiary health care are easily available in neighboring Davidson County, where Nashville affords some of the most advanced medical facilities in the Southeastern United States.

There is substantial evidence, however, that the existing hospital has failed to attract needed medical personnel into the area, and that portions of Wilson County and other counties adjoining it to the east have been considered "medically deprived" for a long period of time, both from the standpoint of medical practitioners and of health care facilities. Wilson County is shown to be one of the most rapidly growing counties in the region.

There are in the record conflicting projections as to present and future demands for hospital facilities in the area. None of these projections, or formulas, amounted to "rules" of the Health Facilities Commission within the meaning of the Administrative Procedures Act, in our opinion, and no one of them appears to have been given controlling weight by the Commission in its consideration of the evidence. Although appellant offered countervailing evidence as to the need for facilities, based upon what it characterizes as more recent data, it is clear from the record that there was material and substantial evidence before the Commission showing a future need of health care facilities which would justify the granting of the subject application.

It is pointed out by appellant in its brief that the determinations to be made by administrative agencies, such as the Health Facilities Commission, are of a complex na-

ture, involving the weighing and consideration of many conflicting factors and elements. The Health Facilities Act of 1973 represents an attempt on the part of the Tennessee General Assembly to regulate the construction and expansion of health care facilities, consonant with a number of federal statutes and policies on the subject. Appellant correctly points out that the task of the Commission is not unlike that of a public service commission regulating public utilities, both as to initial entry and certification and as to expansion of services. Public need under all of the circumstances is the ultimate consideration, and the legislation is designed to prevent costly, inefficient development or duplication of health care facilities. For a comprehensive review and evaluation of state statutes of this type, see Havighurst, *Regulation of Health Facilities and Services by "Certificate of Need,"* 59 Va.L.Rev. 1143 (1973).

Certainly there was evidence offered on behalf of appellant at all stages of the proceedings which would have justified a decision in its favor, and a determination that the new facility was not needed in the proposed service area. This was by no means the only evidence in the record, however, and reviewing courts cannot reverse an agency merely because they might have decided the matter differently. Appellant is an existing and established hospital and clearly had an interest in opposing the application, particularly since it was just completing an expensive addition to its own facilities. The trier of fact was entitled to consider this in evaluating appellant's contentions.

The decision which had to be reached in this case was basically one for determination by the administrative agencies charged with making it, on disputed evidence, representing divided community sentiments and opinions. We find no error, either substantive or procedural, which would warrant a reversal of the decision of the Commission.

. The judgment of the Chancery Court is affirmed and the cause is remanded to that Court for such further orders as may be necessary for implementation of its judgment. Costs are taxed to the appellant.

COOPER, C. J., and FONES, HENRY and BROCK, JJ., concur.