**David REECE, Petitioner-Appellee,**

**v.**

**TENNESSEE CIVIL SERVICE COMMISSION, Respondent-Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 29, 1985.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 28, 1985.

William J. Marett, Jr., Woods, Woods & Watson, Nashville, for petitioner-appellee.

W.J. Michael Cody, Atty. Gen. and Reporter, Michael Lee Parsons, Asst. Atty. Gen., Nashville, for respondent-appellant.

## OPINION

TODD, Presiding Judge, Middle Section.

This is a judicial review of an administrative decision of the Tennessee Civil Service Commission which affirmed the dismissal of the plaintiff from his position as correctional sergeant at the Bledsoe Regional Prison, a facility of the Tennessee Department of Corrections.

On September 22, 1982, plaintiff was served by the Warden of the Bledsoe Prison with notice of termination stating the reason therefor as follows:

You were placed on indefinite suspension on August 12, 1982 due to your arrest and charge of "Manufacturing Marijuana". We were informed today by Attorney General William Pope that you were tried in Bledsoe County General Sessions Court and the court failed to exonerate you of the allegations. I feel that the nature and awareness of these charges would greatly affect your ability to perform the duties of a Correctional Sergeant. Because of this, I feel that I must terminate your employment.

On November 8, 1982, following a "grievance hearing", the Commissioner of Corrections affirmed the dismissal. On November 16, 1982, plaintiff appealed to the Civil Service Commission.

On November 16, 1983, one year later, a hearing was held before the Civil Service Commission which entered its order on December 2, 1983, affirming the dismissal. On petition for review, the Chancellor reversed, and the State appealed.

The sole issue stated by appellant is whether the decision of the Commission is supported by substantial and material evidence.

■ The Trial Court and this Court on Appeal are required by the provisions of the Uniform Administrative Procedure Act to review the findings of fact of an administrative agency upon a standard of substantial and material evidence and to consider the entire record, including any part detracting from evidence supporting the findings of the agency, but may not review issues of fact de novo or substitute the judgment of the court for that of the agency as to the weight of the evidence. TCA §§ 4-523(g, h), 4-524. *Humana of Tennessee v. Tennessee Health Facilities Commission, Et Al,* Tenn.1977, 551 S.W.2d 664.

The gravamen of the grounds for dismissal was *not* that plaintiff was guilty of unlawful involvement with marijuana but that a prosecution had been duly initiated by police officers involving arrest of plaintiff on some charge involving marijuana, that this arrest received intensive publicity in the area of plaintiff's employment, and that the prosecution was terminated without exoneration of plaintiff, resulting in such impairment of his usefulness as required his discharge "for the good of the service".

At the hearing before the Commission, no effort was made by the State to prove guilt. The order of the Commission contains the following:

6. A level IV Grievance Hearing was conducted by Mr. Evans G. Fine, Director Offender Classification, on November 5, 1982. During the hearing, the petitioner admitted that marijuana was in fact growing on his property.

No evidence is found in this record to support the above finding which must therefore be disregarded.

Other findings of the Commission which are supported by substantial and material evidence are as follows:

(1) Prior to his separation from State service, Correctional Sergeant, David Reece, held a supervisory position at Bledsoe Regional Prison.

(2) On August 12, 1982, Sergeant Reece was arrested at his home and charged with manufacturing marijuana. The arrest received extensive media coverage in the Bledsoe County area.

(3) Sergeant Reece was placed on suspension pending an investigation of these charges.

(4) On September 22, 1982, Mr. Reece entered into an Agreed Order pursuant to TCA 40–15–102 et seq. (Pre-trial Diversion). The agreement continued the case until November, 1982.

(5) On September 22, 1982, Warden Livesay determined that the petitioner could not effectively perform the duties of a Correctional Officer and Supervisor because he was not exonerated of the allegations.

There is evidence that plaintiff was arrested at his home on a charge of "manufacturing marijuana", that the arrest, as well as the discovery of marijuana plants in proximity to plaintiff's home received considerable publicity through radio, TV and press media, all of which publicity was disseminated in the small County of Bledsoe and small community of Pikeville where plaintiff lived and worked. Although the arrest warrant is not in this record, other records of the General Sessions Court of Bledsoe County indicate that, on September 22, 1982, plaintiff appeared before the General Sessions Judge and signed a "Memorandum of Understanding" that he would not be tried on a charge of growing marijuana pending his participation in a Pre-Trial Diversion Program under TCA § 40–2105 et seq. and that the case was continued to November 1, 1982. There is further evidence that a charge against plaintiff of "Viol. of T.C.A. 52–1432(a)(1)(F) (Growing Marijuana)" was dismissed on September 22, 1982 and that plaintiff paid $41.50 court costs on the same date. There is also evidence, that, on November 15, 1983, the Circuit Judge of Bledsoe County entered an order captioned "State of Tennessee vs. David Reece" reciting that:

The Court having approved an agreed order on September 22, 1982, and the Defendant having complied with said order and more than ninety (90) days having lapsed since said order was entered, the parties hereby agree that the above styled case should be dismissed as shown by the court records and pursuant to T.C.A. § 40–15–106 all public records allowable under said code section be expunged.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the above styled cause is hereby dismissed as shown by the Court records, and all public records allowable under T.C.A. 40–15–106 are hereby expunged.

There is evidence that plaintiff was employed as correction sergeant, which position requires that he supervise an entire "shift" of security personnel and, in the absence of his lieutenant twice a week, to be in charge of the entire Bledsoe Regional Prison which has some 630 inmates, and 200 to 250 employees of whom 173 are security personnel.

There is evidence that the inmates have radios and television sets, that news of the arrest and charges against plaintiff was readily available to inmates and employees, and that:

[A]nybody that lives in Bledsoe County ought to know how gossip gets .. and if a man is innocent and doing his job, people can make it look like he ain't doing it.

There is also evidence that Bledsoe County is plaintiff's "home": that he was born there, lived a time in Chattanooga, spent some time in the armed services and returned to Bledsoe County.

There is also evidence from the warden of the facility that plaintiff's position was one of trust in many respects including attitude of inmates, attitude of subordinates, and trust from superiors not only in supervising security but in preventing

and reporting breaches of security including introduction of drugs into the institution. The warden stated that, even if a not guilty verdict had been rendered, something of a cloud would have remained over plaintiff such that his ability to supervise would have been impaired; and that the particular disposition of the prosecution left unanswered the question of guilt or innocence so as to destroy plaintiff's usefulness to the institution.

Plaintiff's brief asserts correctly that pre-trial diversion involves no acknowledgement of guilt. However, it is probable that uninformed members of the public regard the procedure as involving some admission of guilt. As stated above, plaintiff was not discharged because of acknowledgement of guilt.

Plaintiff's brief next asserts correctly that the record of the prosecution has been "expunged". However, there is no evidence that the termination of the prosecution under the circumstances or the "expungement of the record" was ever communicated to the public or had any effect whatsoever upon the image of plaintiff in the mind of the inmates and fellow employees of plaintiff.

Plaintiff's brief also asserts (erroneously) that the State insists that the failure of plaintiff to "exonerate himself" (by not guilty plea, trial and not guilty verdict) is evidence of guilt. This is not the theory of the State. The premise of the State, which is supported by the evidence and by common sense, is that whenever a public official is accused of wrongdoing, especially that which closely affects his public duties, his public image is marred because of a suspicion of guilt which is not allayed or removed without a conclusive determination of the fact of guilt or innocence. This is the position in which plaintiff, or any other public official finds himself once he has been charged, falsely or otherwise, and the charges have received the usual venomous publicity. For the superiors of such public employee, the issue is not guilt or innocence, but usefulness or uselessness.

Plaintiff next insists that the testimony of plaintiff's superior, the warden, was not "substantial evidence" that plaintiff's usefulness had been so impaired as to justify his termination. The warden's qualifications were impressive: Bachelor's and Master's degrees in sociology and psychology, counselor at Brushy Mountain Prison, counselor and later Warden of Knoxville Community Service Center, Warden of Bledsoe Regional Prison for four years. The warden explained in detail the relation between unresolved "shadows" upon the integrity of a corrections officer and the response of others to his efforts to supervise. The reasoning of the warden is confirmed by the reasoning of an ordinarily prudent person, as represented by the membership of the Commission.

T.C.A. § 8–30–326 provides in pertinent part as follows:

Dismissal—An appointing authority may dismiss any regular employee in his division when he considers that the good of the service will be served thereby. . . .

■ Taken literally, the statute reads that it is sufficient that the superior "*considers*" that the good of the service will be served by dismissal. However, the clear and necessary import of the statute is that the superior must "consider" for *sufficient reason* that the good of the service will be served. Such sufficient reason is shown in the present case.

Plaintiff next complains that members of the Commission demonstrated their own inclination to approve the dismissal merely because plaintiff failed to exonerate himself. Whatever the motive of the questions asked by the commissioners, they were justified, either upon the testimony of the warden or upon the exercise of their common sense in concluding that plaintiff's usefulness had been seriously impaired by the unresolved public accusations against him and that the "good of the service would be served" by his termination.

■ Plaintiff conceives that this Court is in some manner bound by the supposed finding of the Chancellor that the testimony of the warden was not "substantial and

material evidence". Such is not the law relating to this appeal. No finding of fact is involved, either in Chancery Court or in this Court. No question of credibility is involved before either Court, because there was no viva voce testimony in either Court. The question before the Chancery Court and upon appeal to this Court is a question of law as to the sufficiency of the evidence presented to the Commission and preserved in its record. The opinion in *Metro Govt. of Nashville, etc. v. Shacklett*, Tenn.1977, 554 S.W.2d 601, contains nothing contrary to the foregoing.

Plaintiff argues that, upon being expunged, the record of his arrest and subsequent proceedings ceased to exist for the purpose of this proceeding. This argument is not entirely consistent with the introduction of such records by plaintiff as part of his testimony. However, the existence or non existence of the records or the occurrence or non occurrence of the arrest are immaterial to this proceeding; for, as stated heretofore, the gravamen of the grounds of dismissal was the publicity accorded to the accusation and its effect upon usefulness of plaintiff in the particular public position held by him.

The diversion agreement is not the ground of discharge, although a refusal to sign it, insistence upon a trial and ultimate acquittal, if sufficiently publicized, would have mitigated the effect of the derogatory publicity. The signing of the order of dismissal on September 22, 1982, convinced plaintiff's superior that there would be no judicial mitigation of the effects of the derogatory publicity.

Plaintiff cites *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), wherein police officers were questioned by the Attorney General about irregularities in the performance of their duties after receiving a Miranda Warning. Some of the answers given were used as evidence in a criminal proceeding against the officers in which they were convicted. The Supreme Court reversed the convictions on the ground that the statements of defendants were coerced because the state statute provided that the officers would be subject to removal from office for failing to testify or pleading the 5th amendment. The cited authority is readily distinguishable from the present case in which no confession was obtained and no prosecution, evidentiary ruling or conviction is being reviewed.

The present case is a civil case involving discharge "for the good of the service" and not for the commission of any crime.

While not precisely in point, *Stone v. Commonwealth*, (Pa.Cmwlth.1980) 422 A.2d 1227, was a review of a civil service approval of dismissal of a prison guard for possession of marijuana at a state correctional institution. There was no statutory authorization for discharge "for the good of the service", but only for misconduct or "other substantial reasons". The employee was a guard and not a supervisor, the incident occurred at an institution rather than a home, and guilt was apparently established. In affirming the dismissal, the Pennsylvania Court said:

> In the instant case, appellant's possession of marijuana violated the parameters of the sensitive position which he held and cast doubt on his "competency and ability" to execute his duties, sufficient to warrant removal for cause. 422 A.2d at 1228.

In *Dept. of Justice v. Grant*, 22 Pa. Cmwlth. 582, 350 A.2d 878 (1976) a corrections officer was released from service upon being found in an automobile which was used in a robbery and which contained a stolen handgun. The Appellate Court affirmed and said:

> The appellant in the case at bar was employed to guard prisoners in a state correctional facility; this is a highly sensitive position which requires those who would hold it to avoid even the appearance of impropriety. 350 A.2d at 880.

Diligent search has failed to disclose any published authority directly upon the issue

presented herein, namely, where the statute authorizes discharge "for the good of the service" may an employee be discharged without a finding of some misconduct on his own part and solely upon the basis of impairment or destruction of his usefulness by factors independent of his misconduct?

No authorities have been found which involve a statute or regulation containing the words, "for the good of the service" or their equivalent.

In *Nephew v. Wills*, 298 Mich. 187, 298 N.W. 376, 135 A.L.R. 1340 (1941), a discharge was upheld where the employee married with knowledge of a rule which made marriage a ground for termination. The regulation in question provided for discharge "for any cause ... which, in the opinion of the person with authority ... may interfere with the efficient discharge of his duty".

In *Bradford v. Dept. of Hospitals*, 255 La. 888, 233 So.2d 553 (1970), it was held that after exhaustion of sick leave, the continued inability of an employee to perform his duties was legal cause for dismissal.

■ It must be conceded that the public payroll cannot be made a haven for those who with or without fault have become unable to perform the duties for which they were employed. It must likewise be conceded that "the good of the service" may in proper cases justify or require the discharge of public employees when their efficiency or usefulness in their positions has been seriously impaired by their own fault, by the fault of others, or by blameless misfortune.

For example, could a prison be required to continue the employment of a lookout on the wall who had lost most of his eyesight in an accident not of his own making?

As another example, if a prison chaplain should be accused of an act of base immorality, and the accusation is widely publicized within and without the walls, should the chaplain expect to be retained simply because he is not criminally prosecuted?

Although unnecessary for the present decision, a strong argument can be made for the proposition that public employees whose reputation is vital to their usefulness have a duty to actively respond to any adverse publicity, particularly prosecution for crime, and to take reasonable steps to salvage and rehabilitate their reputation and usefulness. If this be a reasonable duty, then the failure to perform it may amount to a form of passive misconduct contributing to the disability which requires discharge.

The issues in this case are not without doubt, and are not easily resolved; witness one dissent on the Civil Service Commission and the decision of the Chancellor.

The determinative factor is which of two considerations predominate: (1) the right of the State to maintain an efficient, effective correction institution for the protection of the public, or (2) the right of the individual employee to retain his position until he has been proven guilty of misconduct. It is the view of this Court that the first consideration must prevail over the second.

In this view of the case arguments as to presumptions of innocence and burden of proof as to guilt become moot.

The members of this Court sympathize with any employee who may be discharged without proof of misconduct; but the interest of the public requires this sacrifice of public employees when their usefulness has been seriously impaired with or without fault.

The judgment of the Chancellor is reversed. The decision of the Civil Service Commission is affirmed. All costs, including costs of this appeal are taxed against the plaintiff. The cause is remanded to the Chancery Court for such further proceedings, if any, as may be necessary and proper.

Reversed and remanded.

LEWIS and CANTRELL, JJ., concur.