# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 15, 2011 Session

## DONNA CRAWFORD v. DEPARTMENT OF FINANCE AND ADMINISTRATION and STATE OF TENNESSEE CIVIL SERVICE COMMISSION

**Direct Appeal from the Chancery Court for Davidson County**
**No. 09-1502-II     Carol L. McCoy, Chancellor**

---

**No. M2011-01467-COA-R3-CV - Filed January 24, 2012**

---

Appellant, a civil service employee with the State of Tennessee, appeals the trial court's judgment affirming the decision of the Civil Service Commission terminating her employment. The Commission had affirmed the initial order by the Administrative Law Judge, who upheld the decision of the Department of Finance and Administration to terminate Appellant's employment for the good of the service pursuant to Tennessee Code Annotated Section 8-30-326.  Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Phillip Duane Barber and Mary Leech, Nashville, Tennessee, for the appellant, Donna Crawford.

Robert E. Cooper, Jr., Attorney General and Reporter; Bill Young, Solicitor General; and Eugenie B. Whitesell, Senior Counsel, for appellee, Department of Finance and Administration and State of Tennessee Civil Service Commission.

## OPINION

In 2001, Appellant Donna Crawford, a career employee of the State of Tennessee for approximately twenty-six years, became the Accounting Manager with the Tennessee Department of Mental Retardation Services.  At that time, the Department was very small and consisted of only seven or eight employees.  The position that Ms. Crawford filled had been vacant for over a year and necessitated that Ms. Crawford not only fulfill her normal

duties as Accounting Manager, but that she also go back and to clear up many accounting issues that had accumulated over the prior year. At her first evaluation, her supervisor at the time, Deborah Hedges, gave Ms. Crawford an excellent oral review and commended her for a great job performance.

In 2002, the Governor issued an Executive Order, transferring the Division (formerly, Department) of Mental Retardation Services ("DMRS") to the Department of Finance and Administration (F & A). After the transfer, Ms. Crawford's position as Accounting Manager became more critical and essential within the Administrative Services fiscal unit. The workload increased significantly due to the management of a $566 million budget. As Accounting Manager, Ms. Crawford processed all contract payments and grant payments to an increasing network of providers that served the community of DMRS clients enrolled in the TennCare/Medicaid waiver program across the State. Ms. Crawford was also responsible for billing/payment assistance and training to contract providers, reconciling payment dates in the statewide STARS accounts systems and reporting the accrued liabilities to F & A at the end of each tax year. In March 2003, Ms. Crawford suffered a debilitating stroke, which rendered her unable to perform her job duties.

While Ms. Crawford was on sick leave, during the summer of 2003, the F & A began a restructuring of the DMRS. The transfer of the DMRS to the F & A increased the number of state and federal audits to be completed by June 30, 2003. DMRS was under intense federal scrutiny due to two class action lawsuits, one of which resulted in the relocation of clients from state-run developmental centers into the community. The number of network providers needed to accomplish the relocation of clients doubled the contract and grant payments that the Accounting Manager had to handle. As a result, the DMRS was performing several functions, some administrative and some financial, and regional offices were being established. At this time, Mike Morrow became the Acting Deputy Commissioner of the DMRS. Realizing that the DMRS was understaffed, Mr. Morrow brought in more employees, and at least four new positions were created to work under Lucia Beiler, the supervisor of the DMRS. On July 1, 2003, Jeff Smith and Dottie Haygood came from the F & A to the DMRS as consultants. Mr. Smith decided that the DMRS needed its own administrative structure. Accordingly, Mr. Smith prepared a plan for bringing in more employees and reorganizing the DMRS. This plan ostensibly did away with Ms. Crawford's position. The result was that Ms. Crawford's position was split into seven positions–one supervisor, with six positions reporting to that supervisor. The six employees were ultimately shifted to Mr. Smith's office, Fiscal Services in Mental Retardation, and Bill Clay took the supervisor's job. Essentially, shortly after Mr. Smith arrived on July 1, 2003, Ms. Crawford's job of Accounting Manager no longer existed. Ms. Crawford avers that she was not informed of this restructuring.

As a consequence of her stroke, Ms. Crawford exhausted her Family Medical Leave on June 20, 2003. Thereafter, she requested special leave without pay, and was granted thirty days (from June 20, 2003 to July 20, 2003), with the Commissioner's proviso that, if she needed more time, she should request additional special leave without pay. On July 12, 2003, Ms. Crawford had not been released by her physician to return to work and she sent a letter to the Commissioner requesting sixty more days of special leave without pay. The request included a letter from Dr. Philip Xu, Ms. Crawford's treating physician, which stated that Ms. Crawford "continues to complain of blurred vision and unsteady gait which apparently impairs her ability to perform her current job." Dr. Xu did not indicate how long Ms. Crawford's impairments would persist. Following receipt of the request for additional special leave without pay, Ms. Beiler, Ms. Crawford's direct supervisor, informed her that, if she did not return to work by July 28, 2003, her employment would be terminated. A follow-up letter, dated July 15, 2003, was sent to Ms. Crawford, stating that her employment would be terminated on July 28, 2003 "for the good of the service" if she did not return to work on that date. This letter advised Ms. Crawford that she could appeal the decision.

On July 21, 2003, Ms. Crawford wrote to Mr. Morrow, giving notice that she was exercising her right of appeal as set out in the July 15, 2003 letter, and specifically stating that "the proposed action of dismissal is not within the law of the policy." By letter dated August 11, 2003, F&A Commissioner David Goetz notified Ms. Crawford that her request for additional special leave without pay would be denied, and stating that her employment would be terminated "for the good of the service." Specifically, the letter stated that the reason for the decision was "because of the critical nature of the job [Ms. Crawford] held" and "the length of time that it has been vacant." The letter further indicates that "the action is taken in accordance with the *Rules of the Department of Personnel*, Chapter 1120.10, Disciplinary Actions, 1120.10.2 Policy, 1120.0.06 Examples of Disciplinary Offenses. For the good of the service as outlined in T.C.A. §8-30-203." The letter invited Ms. Crawford to participate in a "pre-decision" discussion with the F&A Commissioner's designee, Mr. John Kaufman. This discussion took place on September 4, 2003. By this time, Ms. Crawford's physician had released her to return to work in October, 2003, at a reduced schedule of five hours per day for three days a week; the ultimate goal was for Ms. Crawford to return to work full time after testing her stamina under the reduced schedule. This information was conveyed to Mr. Kaufman at the September 4, 2003 meeting.

On September 9, 2003, Ms. Crawford applied for early retirement. By memorandum dated September 22, 2003, Mr. Kaufman recommended to acting Deputy Commissioner Morrow that Ms. Crawford return to work part-time on October 15, 2003, with the proviso that she be re-evaluated in three weeks to see if she could return to work full-time. Mr. Kaufman also stated in the memorandum that:

Because the work of the division is impaired by the absence or part time presence of Ms. Crawford, and because the state has already granted leave beyond that which is required, I further recommend that if Ms. Crawford is unable to assume her position on a full time basis by January 2, 2004, termination proceedings should begin.

Acting Deputy Commissioner Morrow did not adopt Mr. Kaufman's recommendation. Instead, by letter of October 8, 2003, Commissioner Goetz notified Ms. Crawford of the decision to terminate her employment "for the good of the service," based on his review of the factual information presented at the pre-termination discussion. Commissioner Goetz further informed Ms. Crawford that she would receive ten paid days (without reporting for duty) and thereafter, she would be paid for all accrued annual leave, compensatory time and any other benefits to which she was entitled. After receiving this letter, Ms. Crawford wrote to then-Governor Bredesen to contest her firing. DMRS Deputy Commissioner Stephen Norris responded to Ms. Crawford and advised her that he had requested that a Fourth Step hearing be convened. This Fourth Step hearing was held on December 16, 2003 and January 6, 2004. By letter dated February 4, 2004, Deputy Commissioner Norris advised Ms. Crawford that the termination of her employment would be upheld because the evidence submitted supported management's decision.

Upon appeal by Ms. Crawford, on February 21 and 27, 2008, a Fifth Step hearing was conducted by Administrative Law Judge Margaret R. Robertson ("ALJ"), sitting for the Appellee Civil Service Commission (the "Commission"). The ALJ filed an order on February 2, 2009, in which it found that the DMRS had met its burden of proof, and upheld Ms. Crawford's dismissal for the good of the service. Ms. Crawford asked the ALJ to reconsider, but this request was denied.

Ms. Crawford then appealed the ALJ's decision for review by the Commission, which appeal was heard on May 8, 2009. After review, the Commission adopted the ALJ's order, which became a final order on June 8, 2009. Ms. Crawford sought reconsideration by the Commission, which request was ultimately denied by letter of July 9, 2009.

Ms. Crawford then filed a petition for judicial review with the Davidson County Chancery Court pursuant to Tennessee Code Annotated Section 4-5-322. In relevant part, Ms. Crawford's petition to the Chancery Court states:

> 5. The State offers civil service employees several safeguards to protect career employees when an emergency situation such as Plaintiff's illness occurs and the employee cannot return to

-4-

work, including:

(1) Special leave Without Pay. (Rules of Tennessee Department of Personnel, Chapter 1120-6-.14)
(2) Flexible work hours to accommodate disabled employees. (Rules of Department of Personnel, Chapter 1120-6-.03 authorized under T.C.A., Section 4-4-105 and T.C.A. Section 8-30-215).
(3) Mandates requiring just and legal reasons for termination (Chapter 1120-10-.02).

\*                                    \*                                    \*

8. The Agency denied Plaintiff the Special Leave Without Pay in derogation of Chapter 1120-6-.14 of the Rules of the Tennessee Department of Personnel and the recommendation of the Commissioner of Finance and Administration.

\*                                    \*                                    \*

13. [In failing to adopt the recommendation of Ms. Crawford's physician for a reduced work week], [t]he agency. . .denied Plaintiff a temporary, modified work schedule in derogation of Chapter 1120-6-.03 of the Rules of the Tennessee Department of Personnel.

\*                                    \*                                    \*

15. The agency then illegally terminated Plaintiff from employment erroneously noting that the termination was carried out pursuant to T.C.A. Section 8-30-328 and Chapter 1120.10.06(24) of the Rules of the Department of Personnel, a process designed and reserved for disciplinary termination of employment of persons for misconduct or unsuitability for continued state employment.

\*                                    \*                                    \*

18. The State illegally terminated Plaintiff['s] [employment] in derogation of T.C.A. Section 8-50-103 which prohibits firing an

employee solely because of a physical handicap.

\*                                    \*                                    \*

21.    Plaintiff's rights have been prejudiced because the administrative findings are (1) in violation of constitutional and statutory provisions, (2) arbitrary and capricious and characterized by an abuse of discretion, and (3) unsupported by evidence that is both substantial and material in light of the entire record.

\*                                    \*                                    \*

25.    Plaintiff was a classified civil service employee whose employment could only be terminated for cause pursuant to Chapter 1120-10-.02, Rules of the Department of Personnel . . . .

26. Plaintiff was entitled, pursuant to both the Federal and State Constitutions, to maintain her property right in her job. The unconstitutional taking of her property rights in her job and termination without sufficient reason and in violation of the statute constitute reversible errors by the agency, the Administrative Law Judge and the Civil Service Commission.

The Administrative Record was filed with the trial court. After review of that record, the Chancery Court affirmed the Commission's decision by memorandum and order dated March 22, 2011. Ms. Crawford's motion to alter or amend was denied by order of April 21, 2011. She appeals and raises four issues for review. We conclude that there are three dispositive issues, which we restate as follows:

1.    Whether the Commissioner's finding that the DMRS properly dismissed Ms. Crawford for the good of the service pursuant to Tennessee Code Annotated Section 8-30-326 is supported by substantial and material evidence.

2. Whether the Commissioner's finding that the DMRS acted within its authority and discretion when it denied Ms. Crawford further special leave without pay is supported by substantial and material evidence, and further declined to permit Ms. Crawford

to work part time.

3.  Whether the Chancery Court correctly held that the DMRS did not violate any constitutional or statutory provisions with respect to the dismissal of Ms. Crawford for the good of the service.

Tennessee Code Annotated Section 4-5-322 vests the Chancery Court with jurisdiction to review "contested case" proceedings before the administrative agencies of Tennessee State Government.  If a party disagrees with a final judgment of the Chancery Court, that party may appeal to this Court pursuant to Tennessee Code Annotated Section 4-5-323.  The standard of review to determine whether the agency decision was correct is the same in this Court as in the Chancery Court.  The scope of review is limited by the Uniform Administrative Procedures Act ("UAPA"), Tennessee Code Annotated Section 4-5-101 *et seq.*, to a "narrow and statutorily prescribed review of the record made before the administrative agency." ***Metropolitan Gov't v. Shacklett***, 554 S.W.2d 601, 604 (Tenn. 1977).  Specifically:

> The review shall be conducted without a jury and shall be confined to the record.  In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in court.

Tenn. Code Ann. §4-5-322(g).  Thus, the review provided by the UAPA is not a *de novo* review, but rather, it is generally confined to the record made before the Commission. ***Shacklett***, 554 S.W.2d at 604.

Tennessee Code Annotated Section 4-5-322(h) clearly states that this Court may reverse or modify the decision of the agency **only** when that decision is:

> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In addition, Tennessee Code Annotated Section 4-5-322(i) provides that no agency decision "in a contested case shall be reversed, remanded, or modified . . . unless for errors which

affect the merits of such decision." *Id*.; *see also United Inter-Mountain Tel. Co. v. Public Serv. Comm'n*, 555 S.W.2d 389, 392 (Tenn. 1977); *Humana v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977).

Ms. Crawford has the burden of proving that the Commission's decision is not supported by substantial and material evidence. *See, e.g., Ogrodowczyk v. Tennessee Bd. for Licensing Health Care Facilities*, 886 S.W.2d 246, 251 (Tenn. Ct. App. 1994). Substantial and material evidence has been defined as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984). Substantial and material evidence "requires something less than a preponderance of the evidence . . . but more than a scintilla or glimmer." *Wayne Co. v. Tennessee Solid Waster Disposal Control Bd*., 756 S.W.2d 274, 289 (Tenn. Ct. App. 1988) (citations omitted). "Substantial evidence is not limited to direct evidence but may also include circumstantial evidence or inferences reasonably drawn from direct evidence." *Wayne Co.*, 756 S.W.2d at 280.

Pursuant to Tennessee Code Annotated Section 4-5-322(h), in reviewing the record made before the Commission, the reviewing court must give considerable deference to the findings of fact made by the Commission and may not substitute its "judgment for that of the agency as to the weight of the evidence. . . even when the evidence could support a different result." *Wayne Co.*, 756 S.W.2d at 279 (citations omitted); *see also* Tenn. Code Ann. §4-5-322(h)(5)(B) (clarifying that the reviewing court must not re-weigh the evidence). In *CF Industries v. Tennessee Public Service Comm'n*, 599 S.W.2d 536 (Tenn. 1980), our Supreme Court held that "a concurrent finding between the agency and the trial court on any issue of fact is conclusive upon this Court," explaining:

> Unless there is a plain abuse of discretion by the Commission, its orders will not be disturbed on appeal. And more especially where the Chancellor has considered the record. . .and affirmed the order of the Commission, we feel that this concurrent finding is conclusive of the issue.

*Id*. at 530 (quoting *Blue Ridge Transp. Co. v. Hammer*, 203 Tenn. 398, 313 S.W.2d 433 (1958)).

The standard of review for Tennessee Code Annotated Section 322(h)(4)— "[a]rbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion. . . ."— is similar to that for Subsection (h)(5). The Court, in *Jackson Mobilphone Co., Inc. v. Tennessee Public Service Comm'n*, 876 S.W.2d 106 (Tenn. Ct.

App. 1993), defined this standard as follows:

> In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error in judgment. An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

*Jackson*, 876 S.W.2d at 110-11 (citations omitted).

### Termination of Ms. Crawford's employment "for the good of the service," pursuant to Tennessee Code Annotated Section 8-30-326

Tennessee Code Annotated Section 8-30-326 provides, in pertinent part, as follows:

> (a) An appointing authority may dismiss any employee in the authority's division when the authority considers that the good of the service will be served thereby. No dismissal of a regular employee shall take effect unless, at least ten (10) days before the effective date thereof, the appointing authority gives notice to such employee and files a written statement with the commissioner. The employee shall have an opportunity to file with the appointing authority a written statement regarding the proposed dismissal, a copy of which shall be filed with the commissioner. . . .
>
> (b) Whenever an employee is dismissed "for the good of the service," the notice of termination must outline in detail how the service will be benefitted by such termination.

Based upon the evidence presented, the ALJ concluded that the DMRS acted within its authority when it terminated Ms. Crawford's employment "for the good of the service." Specifically, the ALJ concluded that:

> 12. The Division of Mental Retardation Services has met its burden to prove by a preponderance of the evidence that Grievant's dismissal from state employment for the good of the service after she had exhausted all available leave and thirty (30)

days' leave without pay, and was still unable to return to work was proper. The reasons given by DMRS for Grievant's dismissal being for the good of the service, including the critical nature of the position that she held, the length of time it had been vacant due to her absence and the exigencies of the division responsibilities that made it necessary to fill the position as quickly as possible, are sufficient and appropriate to substantiate the decision under these facts.

Tennessee Code Annotated Section 8-30-326(a) authorizes an appointing authority to "dismiss any employee in the authority's division when the authority considers that the good of the service will be served thereby." Subsection (b) requires the notice of termination of employment to "outline in detail how the service will be benefited" by the termination of employment. Tennessee caselaw, arising out of this statutory scheme, further establishes that the employer must have a "sufficient reason" for a dismissal based on grounds of "for the good of the service." *Reece v. Tennessee Civil Serv. Comm'n*, 699 S.W.2d 808, 811 (Tenn. Ct. App. 1985). In *Reece*, this Court specifically stated that:

> It must be conceded that the public payroll cannot be made a haven for those who with or without fault have become unable to perform the duties for which they were employed. It must likewise be conceded that "the good of the service" may in proper cases justify or require the discharge of public employees when their efficiency or usefulness in their positions has been seriously impaired by their own fault, by the fault of others, or by blameless misfortune.

*Reece*, 699 S.W.2d at 813; *see also* *Sutton v. Tennessee Civil Serv. Comm'n*, 779 S.W.2d 788, 790 (Tenn. 1989) (suggesting, in *dicta*, that termination of employment "for good of the service" could possibly be justified for absences arising from authorized sick leave if the employee's repeated absence becomes so disruptive that the employee is unable to function effectively in his or her position).

In this case, the Chancellor determined that the DMRS had complied with Tennessee Code Annotated Section 8-30-326 and the law set forth in *Reece*. We have reviewed the entire record, and we agree with this assessment. In the first instance, the notice of termination sent to Ms. Crawford clearly expressed sufficient reasons as to how "the service [would] be benefitted by such termination." Tenn. Code Ann. §8-30-326(b). The August 11, 2003 letter to Ms. Crawford specifically provides, in relevant part:

As of July 28, 2003, you have exhausted all available leave including sick, annual, Family Medical Leave, and 30-days Special Leave without Pay (last actual workday was March 7, 2003). You have requested an additional 60 days leave. Because of the critical nature of the position you held, and the length of time that it has been vacant, it is imperative that it be filled as quickly as possible. For that reason, it is management's recommendation not to grant the additional 60 days and that you be separated for the good of the service.

Ms. Crawford also received other notices regarding the termination of her employment, including a follow-up letter dated August 25, 2003 from the Commissioner, and a letter dated July 15, 2003 from Lucia Beiler.

At the Fifth Step hearing, the ALJ heard testimony concerning the DMRS's decision to terminate Ms. Crawford's employment for the good of the service. According to the transcripts, Karen Hayes, Human Resources Director for the DMRS, explained that, as a general rule, once an employee goes into unpaid status, management has the option to separate an employee for the good of the service if the position at issue needs to be filled. Ms. Hayes further testified that Ms. Crawford's employment was terminated as a result of her having depleted her paid and unpaid leave, and the Division's immediate need for someone to do the work that Ms. Crawford had done prior to her stroke. Three more witnesses, including Terry Poff, Chief of Administrative Services for the DMRS, Jeff Smith, Acting Assistant Commissioner, and Lucia Beiler, Ms. Crawford's immediate supervisor, also testified in detail about DMRS's immediate need for an experienced, full-time employee. Consistent with the reasons set out in the August 11, 2003 letter, *supra*, Ms. Poff testified that Ms. Crawford was dismissed solely because the DMRS had reached the point where it needed a full-time employee to perform the accounting work that Ms. Crawford had previously performed. Specifically, Ms. Poff stated that the amount of accounting work had significantly increased in 2003, due to the restructuring and that she and other staff had tried to cover for Ms. Crawford, but that they could not meet all of the deadlines:

[O]bviously everybody felt great compassion toward Donna and felt horrible about what had happened to her, but we also knew that the Division was in a state of such turmoil and flux that we had to have somebody in that accounting manager position. We could not—we couldn't leave it open any longer. We had waited as long as we possibly could. We'd done everything we could to try to cover those responsibilities, but things were getting to the point where we just couldn't any longer bear that

-11-

multiple burden.

Ms. Beiler's testimony corroborates Ms. Poff's. Ms. Beiler stated that the DMRS had reached its "breaking point," and the Division needed someone there doing the work that had to be done. Mr. Smith's testimony mirrored that of Ms. Beiler and Ms. Poff.

Despite this evidence, Ms. Crawford asserts that "no just and legal cause" existed to support the termination of her employment. She disagrees with the ALJ's finding that the DMRS had "sufficient reason" to terminate her employment for the good of the service. Ms. Crawford further argues that the specific reasons asserted by the DMRS were insufficient, and that the DMRS further violated her rights by failing to inform her that her position had been "'morphed' into several different positions" as a result of the 2003 reorganization. From our review of the record, these were the same arguments espoused by Ms. Crawford at the hearing before the ALJ, and in her petition for review by the Chancery Court. As the Chancellor correctly noted, "by raising these questions again, [Ms. Crawford] essentially is asking this Court to make a *de novo* review of the DMRS's decision . . . ." As set out above, a *de novo* review is not within the purview of either the trial court or this Court; rather, an administrative decision that is supported by substantial and material evidence may not be reversed solely because the evidence could also support another determination. *See Papachristou v. Univ. of Tennessee*, 29 S.W.3d 487, 490-91 (Tenn. 2000); *Hughes v. Board of Comm'r of City of Chattanooga*, 319 S.W.2d 481, 484 (Tenn. 1958). Our review of the evidence presented at the Fifth Step administrative hearing supports the ALJ's decision that the DMRS had sufficient grounds to terminate Ms. Crawford's employment for the good of the service, and that the DMRS did not act outside the scope of its authority in making this decision.

### Denial of further special leave without pay and/or modified work schedule

Ms. Crawford next argues that the Commission's decision should be reversed because the DMRS allegedly violated an obligation under the State's personnel rules to accommodate her by extending special leave without pay or by permitting her to work part-time until she could return to full time. *See* TENN. COMP. R. & REGS. 1120-6-.02 (flexible schedules) and 1120-6-.13 (special leave). Specifically, Ms. Crawford argues that the DMRS decision not to follow Mr. Kaufman's recommendation to permit Ms. Crawford to work part-time starting October 15, 2003, and/or its decision not to allow her additional special leave without pay was arbitrary and capricious or was otherwise characterized by an abuse of discretion or clearly unwarranted exercise of discretion. We disagree.

The crux of Ms. Crawford's argument is that the DMRS failed to accommodate her by extending special leave without pay or by permitting her to work part-time in her position.

In addition to the argument that the Commission erred in failing to follow Mr. Kaufman's recommendation regarding part-time work, Ms. Crawford also argues that Commissioner Goetz had assured her that she could request and that she would receive additional special leave at the expiration of the thirty days unpaid leave that had already been granted. In addition, Ms. Crawford contends that the DMRS should have held a position open for her because it had done so for other employees who had been away from work due to extended illnesses. As a result of these alleged violations, Ms. Crawford argues that the DMRS violated state and federal disability and discrimination law by not accommodating her.

Based upon our finding above that the ALJ's decision to uphold the termination of Ms. Crawford's employment was supported by substantial and material evidence in the record, we cannot now conclude that the ALJ's decision was the result of a "clear error of judgment" so as to constitute an arbitrary and capricious decision. *Jackson*, 876 S.W.2d at 110. The record reveals that the ALJ did, in fact, consider Ms. Crawford's arguments concerning the DMRS's decision not to hold her position open. As to each of Ms. Crawford's claims, the ALJ ruled that the DMRS had acted within the scope of its authority and discretion. In particular, the ALJ ruled that Ms. Crawford's interpretation of civil service protection was a "misconception of what the civil service rules provide" because "[o]nce one exhausts all available leave, one must report for duty or be subject to dismissal." The ALJ's conclusion in the initial order provides:

> 19. None of Grievant's argument[s] alter the basic facts that on June 28, 2003, when all of Grievant's available leave balances were exhausted and Grievant had had the advantage of thirty (30) days of special leave without pay in addition, there was absolutely no assurance of when Grievant might be able to return to work, except that it would be months away at a minimum, and she was not able to return with medical clearance at that time. It is also clear that the Division was experiencing not only significant reorganization but steadily mounting work loads which necessitate that the Division be able to fill positions to complete its responsibilities. Grievant's lack of any further leave resources and the speculative nature of her eventual return, in the context of the increasing work pressures on the Division substantiates the discretionary decision to deny further requests for special leave without pay and to terminate her for the good of the service.

There is no indication in the record that the DMRS was required to hold open a position for Ms. Crawford until she could return to work. In fact, special leave is

discretionary according to the Department of Human Resources Rule 1120-6-.13. In her testimony, Karen Haynes, Human Resources Director for the DMRS, testified that an appointing authority typically grants an employee's first request for special leave, as it did with Ms. Crawford. However, Ms. Haynes testimony clearly indicates that further requests for special leave are rarely granted, especially if the employing agency has reached the point where it must fill the position in order to ensure that the department carries out its duties. As noted above, the testimonies of Ms. Poff, Ms. Beiler, and Mr. Smith clearly support a finding that the DMRS could wait no longer to fill the position of accounting manager.

Although there is no indication in the record as to why Deputy Commissioner Mike Morrow did not adopt the recommendation of John Kaufman to permit Ms. Crawford to work part-time, it is a reasonable inference from the record as a whole that it was the building work load and the need for an immediate full-time employee that prompted the decision. In his testimony, Jeff Smith explained that Mr. Kaufman's role in the pre-termination meeting was "strictly to look at the situation and give us his input." He added that "certainly we considered his input . . . . [T]his was not something we took lightly." There is no requirement that the Commissioner adopt Mr. Kaufman's recommendation. The fact that the work load at the DMRS was mounting, coupled with the fact that Ms. Crawford's treating physicians could not provide a real indication of when, or if, Ms. Crawford would be able to perform her previous job functions, provides sufficient grounds to support Deputy Commissioner Morrow's decision not to not adopt Mr. Kaufman's recommendation.

### Violations of constitutional and statutory provisions

Ms. Crawford first argues that the DMRS unconstitutionally deprived her of her property right in her job. Apparently, the crux of Ms. Crawford's argument is that her employment was terminated using disciplinary procedures, despite the fact that there was no problem with her past job performance. Tennessee Code Annotated Section 8-30-326 provides authority for dismissal of an employee for the good of the service. Tenn. Comp. R. & Reg. 1120-10-.6(27) also includes a list of disciplinary offenses. Ms. Crawford complains that the August 11, 2003 letter cites the disciplinary rule instead of specifically citing the statute, therefore insinuating that she was being dismissed because of disciplinary reasons. The evidence in the record clearly shows that the DMRS dismissed Ms. Crawford for legitimate business reasons, and everyone, including Ms. Crawford, acknowledged at the hearing that she was not dismissed for her conduct. In his order, the Chancellor notes that the Department of Human Resources has included termination of employment for the good of the service in the disciplinary rules, but the statute indicates that the legislature intended it for non-disciplinary reasons too. Accordingly, Ms. Crawford's argument is a distinction without a difference.

Examining Ms. Crawford's argument that her right to due process was violated, the ALJ specifically ruled:

> 18. Grievant's arguments that DMRS failed to follow proper procedures for utilizing the provision of "for the good of the service" as the basis for terminating Grievant is without merit. Grievant received appropriate notice, due process, consideration and treatment in her hearings, correspondence, dismissal letter and coding for rehire. If anything, the Division went out of its way to provide multiple opportunities for Grievant to argue her case and more than adequately notified Grievant at each stage of her status and the likelihood that she might be terminated if she was unable to return to work full time when her leave was exhausted. If any flaw in procedure existed, that flaw was remedied by the Level V hearing, which is conducted de novo, and at which time Grievant was clearly aware of the reasons for her termination for the good of the service.

Ms. Crawford's assertion that her firing was disciplinary in nature is not supported by the record. The State's witnesses adamantly stated that the termination of Ms. Crawford's employment had nothing to do with her past job performance. In fact, there is no evidence that Ms. Crawford had ever had any disciplinary action taken against her. Ms. Crawford acknowledged this in her own testimony, admitting that the dismissal was based on her inability to return to work and to do her job after her leave had been exhausted.

Moreover, Ms. Crawford's argument that her right to procedural due process was violated is not supported by the record. Ms. Crawford is correct that her property right in her job entitled her to a multi-step due process procedure, under which she was able to appeal the adverse decision at several levels, including judicial review. The record reveals that, Ms. Crawford received all consideration by the DMRS and throughout the appeals process. Still, the fact remains that, through no fault of her own, after Ms. Crawford exhausted all available leave and an additional thirty days of unpaid leave, she was still unable to perform her job full time, if at all. Under **Reece**, the State was not obligated to hold that position open, especially in light of the increased work load in the department. Ms. Crawford received all notices and had all opportunity to appeal the adverse decision. Her due process rights were not violated under the facts presented in this record.

In addition to the alleged violation of her due process rights, Ms. Crawford also alleged that the DMRS violated Tennessee's Disability Act, which is found at Tennessee Code Annotated Section 8-50-103. Specifically, Ms. Crawford alleged that the statute was

violated when she was not permitted to work on a modified schedule. Here, Ms. Crawford reiterates her argument that the DMRS erred in not adopting Mr. Kaufman's recommendation of a part time schedule. For the reasons discussed in detail above, the record indicates that Ms. Crawford was dismissed for a valid, legitimate, and important business reasons. At any rate, nothing in the record supports a finding that her dismissal was due to any disability, *per se*.

Ms. Crawford further alleges that the DMRS violated Tennessee Code Annotated Section 8-30-326(b) because the notice of dismissal did not outline how the service would be benefitted by her termination of employment. Essentially, Ms. Crawford contends that the DMRS should have explained that it was restructuring the department and that her position had changed. We find no statutory requirement that obligates the State to inform Ms. Crawford of this information. Under Tennessee Code Annotated Section 8-30-326(b) "the notice of termination must outline in detail how the service will be benefitted by such termination." The notice of termination does just that, explaining that "because of the critical nature of the job [Ms. Crawford] held" and "the length of time that it has been vacant" the DMRS was moving forward to fill the position as soon as possible. In short, it was the fact that the work was mounting and that Ms. Crawford was no longer able to perform her job, whether the job had changed or not that prompted her dismissal for the good of the service.

In addition, Ms. Crawford argues that the notice of termination should have explained that she was eligible for re-hire by the State. In its decision, the Chancery Court noted that the DMRS should have given better notice to Ms. Crawford that she was eligible for re-hire, but that its failure to do so was not a basis for reversal of the Commission's decision under Tennessee Code Annotated Section 4-5-322. As explained by Karen Haynes, because Ms. Crawford was not dismissed for disciplinary reasons, she was eligible for re-hire. It is undisputed that her separation was coded "46" in her personnel file, which meant that she would be accorded all of the re-hire rights one retains with the State after a non-disciplinary dismissal. Ms. Haynes further explained that the State only advises an employee in his or her termination notice if he or she is **not** eligible for re-hire. More importantly, however, the evidence in record shows that Ms. Crawford was aware that she was eligible for re-hire. Ms. Haynes testified that she tried to help Ms. Crawford find a new position, and Ms. Crawford acknowledged this fact and also the fact that she had not actively attempted to be re-hired by the State. There is simply no evidence to suggest that Ms. Crawford was ever prevented from applying for another position.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Donna Crawford, and her surety.

_____
J. STEVEN STAFFORD, JUDGE